IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

      v.

NORTH CAROLINA STATE BOARD OF
ELECTIONS; SAM HAYES, in his official
capacity as Executive Director of the North
Carolina State Board of Elections; FRANCIS
X. DE LUCA, JEFF CARMON, STACY
EGGERS IV, SIOBHAN O'DUFFY MILLEN,
and ROBERT RUCHO, in their official
capacities as Members of the North Carolina
State Board of Elections; and STATE OF
NORTH CAROLINA,

          Defendants.

Civil No.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

     Plaintiff, the United States of America, brings this action against the North Carolina State

Board of Elections (the "NCSBE"); Sam Hayes, in his official capacity as Executive Director of

the NCSBE; Francis X. De Luca, Jeff Carmon, Stacy Eggers IV, Siobhan O'Duffy Millen, and

Robert Rucho, in their official capacities as Members of the NCSBE; and the State of North

Carolina and alleges:

**INTRODUCTION**

     1.     The Attorney General of the United States hereby files this action on behalf of the

United States of America to enforce the requirements of Section 303(a) of the Help America

Vote Act of 2002 ("HAVA"), with respect to the conduct of elections for Federal office in the State of North Carolina. 52 U.S.C. § 21083(a).

2. On March 25, 2025, President Donald J. Trump signed Executive Order 14248 entitled "Preserving and Protecting the Integrity of American Elections" to ensure that elections are being held in compliance with federal laws that guard against illegal voting, unlawful discrimination, and other forms of fraud, error, or suspicion. The election integrity issues raised in this action are a core component of the Federal election laws that Congress has statutorily charged the Attorney General of the United States, through the Civil Rights Division, to enforce. *See* 52 U.S.C. § 21111.

3. "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Purcell v. Gonzalez,* 549 U.S. 1, 4 (2006).

4. The cornerstone of public trust in government lies in free and fair elections. The core of the compact between a state and its citizens rests in ensuring that only eligible citizens can vote in elections.

5. Defendants have failed to maintain accurate lists in North Carolina's computerized statewide voter registration in violation of Section 303(a)(5) of HAVA and the sacred trust that the people of the State of North Carolina have put in them to ensure the fairness and integrity of elections for Federal office in the state, necessitating this litigation.

## BACKGROUND

6.      The purpose of HAVA "can be stated very simply—it is to improve our country's election system…. Historically, elections in this country have been administered at the state and local level…." But Congress found that "[w]hile local control must be preserved, it is time to recognize that the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." H.R. Rep. 107-329, pt. 1, at 31-32 (2001).

7.      HAVA imposes "minimum requirements" for the conduct of Federal elections, that "allow the states to develop their own laws and procedures to fulfill the requirements" to the extent that they are consistent with HAVA's standards. *Id.* at 35.

8.      In enacting HAVA, Members of Congress found that "One of the most exciting and promising reforms… is statewide registration. In its June 2001 report to Congress, the bipartisan Federal Election Commission, after consulting with state and local election officials, recommended that states '1) develop and implement a statewide computerized voter registration database; 2) insure that all local registration offices are computerized; and 3) link their statewide computerized system, where feasible, with the computerized systems of the collateral public agencies relevant to the NVRA (motor-vehicle offices, public assistance offices, etc.).' The bi-partisan National Commission on Federal Election Reform ('Ford/Carter Commission') also recommended states adopt such a system, as did the nation's election administrators in their non-partisan National Task Force on Election Reform." *Id.* at 35-36.

9.     The benefits of uniform Federal standards for voter registration are clear. "Creation of such a system will make the registration lists more accurate, and easier to update. It should reduce the incidence of voters appearing at a polling place only to discover that no record of their registration can be found. When voters move from one jurisdiction to another within that state, the statewide system will be able to track that movement. If for some reason a voter remained registered at their old address, the election officials will be able to see that and take corrective action. Requiring states to develop statewide databases will modernize and improve registration nationwide." *Id.* at 36.

10.     Additionally, "The minimum standard requires states to create a single database that is official, centralized and administered at the state level…. The intent of the minimum standard is to establish one database that is identical and is the same program throughout the state and local jurisdictions so that all training can be uniform, all records requirements are identical, and that the state has full authority for maintenance and quality matters related to the database. The intent is also to assure that there are not jurisdictional nor vendor issues in terms of operability, problem resolution, or other types of reasons for one part of the system not matching the other." *Id.*

11.     The minimum standards for a centralized state voter registration database with accurate records are part of a comprehensive system to ensure the integrity of elections for Federal office. "States are… obligated to maintain accurate lists and thereby minimize the opportunities for and the incidence of fraud." *Id*. "One of the most damaging effects of inaccurate rolls is that they lead to the public perception that the process can be easily manipulated." *Id.* at 37.

12.    Under Section 303(a) of HAVA, a voter registration application for an election for federal office may not be accepted or processed by the State unless it includes a driver's license number from the applicant, or if the applicant does not have a driver's license, the last four digits of the applicant's social security number. If an applicant has not been issued a current and valid driver's license or social security number, the State must assign a special identifying number for voter registration. *See* 52 U.S.C. § 21083(a).

13.    Section 303(a)'s requirement that States utilize a unique identifying number to voters who indicate they have neither a driver's license nor a social security number is an integral part of the minimum Federal standards. As the House Report explained, "It is likely that states will find it necessary to create a unique identifier to distinguish registered voters who happen to have the same name and/or birth date. The unique identifier so created will be used to assure that list maintenance functions are attributable to the correct voter; so as to avoid removing registrants who happen to have the same name and birth date as a felon, for example." H.R. Rep. 107-329, pt. 1, at 36.

14.    Additionally, compliance with the computerized statewide voter registration list requirements in Section 303(a) of HAVA is a necessary mechanism to facilitate voter list maintenance procedures to ensure the accuracy of voter records used for Federal elections. In particular, "States are encouraged to use the unique identifier to share information with other governmental offices for purposes such as death certificates, court and tax records, etc., to assure proper maintenance of voter records, file integrity, and protection of voter rights." *Id.*

15.    In violation of HAVA's mandate and clear Congressional intent, the State of North Carolina used a state voter registration form that did not explicitly require a voter to provide a driver's license or the last four digits of a social security number.

16.     Upon information and belief, a significant number of North Carolina voters who did not provide a driver's license number or the last four digits of a social security number using that voter registration form were nonetheless registered by their election officials, in violation of HAVA.

17.     After an administrative complaint identified North Carolina's violations of Section 303(a) of HAVA, Defendants admitted the violations.

18.     Nevertheless, Defendants only took limited actions to prevent future violations from reoccurring by adopting a new voter registration form that required applicants to provide their driver's license or last four digits of their social security number, if they had one of those forms of identification.

19.     Upon information and belief there currently are a significant number of voters that do not have a driver's license number, last four digits of a social security number, or any other identifying number, as required by Section 303 of HAVA, listed in North Carolina's state voter registration file. Those violations will continue absent relief from this Court.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 52 U.S.C. § 21111.

21.     Venue for this action is proper in the United States District Court for the Eastern District of North Carolina, pursuant to 28 U.S.C. §§ 113, 1391(b).

## PARTIES

22.     Plaintiff United States of America seeks declaratory and injunctive relief pursuant to Section 401 of HAVA, 52 U.S.C. § 21111, which authorizes the Attorney General to bring this suit to enforce HAVA.

23.     Defendant State of North Carolina is a State of the United States of America and is subject to the requirements of HAVA, including specifically those requirements with respect to a computerized statewide voter registration list in elections for Federal office. 52 U.S.C. §§ 21083(a), 21141.

24.     Defendant North Carolina State Board of Elections NCSBE is an agency of the State of North Carolina responsible for "general supervision over the primaries and elections in the State…" N.C. Gen. Stat. § 163-22(a). Defendant NCSBE is responsible for "furnish[ing] to the county boards of elections the registration application forms," including the forms used for the State's computerized statewide voter registration list under HAVA. N.C. Gen. Stat. § 163-22(e). Defendant NCSBE has been designated by North Carolina law to "have the authority to adopt rules and guidelines to implement the minimum requirements of the Help America Vote Act of 2002." N.C. Gen. Stat. § 163-82.27. Defendant NCSBE is responsible along with county election boards for maintaining "[t]he State voter registration system," which "is the official voter registration list for the conduct of all elections in the State" of North Carolina including the computerized statewide voter registration list used for elections for Federal office pursuant to HAVA, N.C. Gen. Stat. § 163-82.10, with assignment of a unique registration identifier, *id.* at § 163-82.10A.

25.     Defendant Sam Hayes is the Executive Director of NCSBE and is the "'Chief State Election Official'" of North Carolina. N.C. Gen. Stat. §§ 163-27(d), 163-82.2. In this capacity, Defendant Hayes is "responsible for staffing, administration, and execution of the [NCSBE's] decisions and orders" and "such other responsibilities as may be assigned by" the NCSBE. N.C. Gen. Stat. § 163-27(c). Defendant Hayes is sued in his official capacity.

26. Defendant Francis X. De Luca is Chair of the NCSBE. Upon information and belief, Defendant De Luca resides in Wilmington, North Carolina. Defendant De Luca is sued in his official capacity.

27. Defendant Stacy Eggers IV is Secretary of the NCSBE. Upon information and belief, Defendant Eggers resides in Boone, North Carolina. Defendant Eggers is sued in his official capacity.

28. Defendant Jeff Carmon is a Member of the NCSBE. Upon information and belief, Defendant Carmon resides in Snow Hill, North Carolina. Defendant Carmon is sued in his official capacity.

29. Defendant Siobhan O'Duffy Millen is a Member of the NCSBE. Upon information and belief, Defendant Millen resides in Raleigh, North Carolina. Defendant Millen is sued in her official capacity.

30. Defendant Robert Rucho is a Member of the NCSBE. Upon information and belief, Defendant Rucho resides in Catawba County, North Carolina. Defendant Rucho is sued in his official capacity.

## HAVA'S VOTER REGISTRATION LIST MANDATES

31. On October 29, 2002, HAVA was signed into law by the President. 52 U.S.C. §§ 20901-21145. Title III of HAVA requires certain "uniform and nondiscriminatory election technology and administration requirements" which apply in elections for Federal office, including those specified in Section 303. 52 U.S.C. §§ 21081-21083.

32. Section 303(a) of HAVA, entitled "Computerized statewide voter registration list requirements," requires that "each State, acting through the chief State election official, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized,

interactive computerized statewide voter registration list defined, maintained, and administered at the State level." Section 303(a) applies to all States that require voter registration for elections for Federal office. 52 U.S.C. § 21083(a).

33.     Among the requirements of Section 303(a) of HAVA for the statewide voter registration list are the following:

(a)     The list shall serve as the single system for storing and managing the official list of registered voters throughout the State, 52 U.S.C. § 21083(a)(1)(A)(i);

(b)     The list must contain the name and registration information of, and must assign a unique identifier to, each legally registered voter in the State, 52 U.S.C. §§ 21083(a)(1)(A)(ii)-(iii);

(c)     The list must be coordinated with other agency databases within the State, 52 U.S.C. § 21083(a)(1)(A)(iv);

(d)     Any election official in the State, including any local election official, must be able to obtain immediate electronic access to the information contained in the list, and all voter registration information obtained by any local election official must be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local election official, 52 U.S.C. §§ 21083(a)(1)(A)(v)-(vi);

(e)     The State must provide the necessary support so that local election officials are able to enter voter registration information on an expedited basis, 52 U.S.C. § 21083(a)(1)(A)(vii);

(f)     The list must serve as the official voter registration list for the conduct of all elections for Federal office in the State, 52 U.S.C. § 21083(a)(1)(A)(viii); and

(g)     The list must provide that no application for voter registration shall be accepted or processed unless it includes a driver's license number, for persons who have a driver's license number, or the last four digits of the social security number, for persons who do not have a driver's license number. For persons who do not have these numbers, the State must assign a unique identifier, 52 U.S.C. § 21083(a)(5)(A).

## NORTH CAROLINA'S HAVA LIST MAINTANENCE VIOLATIONS

34.     Defendant State of North Carolina is covered by and is required to comply with the requirements of Section 303(a) of HAVA with respect to elections for Federal office on and after January 1, 2006. 52 U.S.C. §§ 21083(d)(1)(B), 21141.

35.     Before the 2024 Federal elections, North Carolina used a voter registration application that did not require applicants to provide the information required by Section 303(a). Although the application included fields for the applicant to provide their state driver's license or Department of Motor Vehicles ("DMV") number and the last four digits of their social security number, the fields were optional to complete. The application indicated that "fields in red text are required," but the fields for the information required by Section 303(a) of HAVA were printed in black text.

36.     Before the 2024 Federal elections, North Carolina provided a video with instructions on how to register to vote.[1] At 1 minute and 47 seconds (1:47), the instructions in the video state, "Let's look at a voter registration application. The required fields on the application are in red. These are the eligibility requirements: your name, date of birth, residential address, mailing address, and your signature…" The fields required by Section 303(a) of HAVA are not identified in the video as required fields that must be completed.

---

[1] See https://www.youtube.com/watch?v=ZvYUqlFgpw0.

37.     On October 6, 2023, before the 2024 Federal elections, Defendant NCSBE received an administrative complaint filed pursuant to Section 402 of HAVA, 52 U.S.C. § 21112 ("Administrative Complaint"). The Administrative Complaint alleged that North Carolina's failure to require voter registration applicants to provide either their state driver's license or DMV number, if they had one, or to provide the last four digits of their social security number, if they had one, violated Section 303 of HAVA.[2]

38.     The Administrative Complaint requested that North Carolina revise the state voter registration form and accompanying instructions to be compliant with Section 303. The Administrative Complaint further requested that North Carolina obtain missing information required by Section 303(a), if they possessed it, from all voters who registered to vote on or after January 1, 2004 or whose registration date was unknown and to update the statewide voter registration list as required by Section 303(a)(5) of HAVA.

39.     Defendant State of North Carolina has recognized that it has not taken the actions necessary to achieve timely compliance with the requirements of Section 303(a) of HAVA. Specifically, at a NCSBE meeting on November 28, 2023, NCSBE members and their legal counsel made the following admissions in response to the Administrative Complaint:

    a.     Paul Cox, General Counsel for the NCSBE, stated, "Legal counsel agrees with the complaint that HAVA does require a registrant, a mail in registrant, to either provide their driver's license number or their last four digits of their social security number. And only if they do not have one of those to check the box saying, 'I do not have one' and that will still allow them to register." NCSBE, State Board Meeting, at 1:15:10 –

---

[2] The complaint is available at
https://s3.amazonaws.com/dl.ncsbe.gov/HAVA%20Administrative%20Complaints/2023-10-06%20Snow/Snow%20Amended%20HAVA%20Complaint.pdf.

1:15:30 (Nov. 28, 2023) ("11/28/2023 NCSBE Meeting"),

https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2023-11-28/Part 1 - State Board of Elections Meeting-20231128.mp4.

b.      Mr. Cox acknowledged that North Carolina's voter registration form appeared to make the required Section 303 fields optional explaining, "So it happens that we were already in the process of revamping the voter registration form and that voter registration form is going to be released very shortly. We've been working on this for quite a while because the voter registration form, we viewed it as somewhat confusing and needing to have an overhaul and needing to be simplified. This is one of the items we were looking at already. [The Administrative Complaint] has pointed out something that we were already looking at which is that there's an inconsistency with the way that we present the HAVA ID question to voters and the way that the federal statute reads, and so we agree on that. So, we think that our recommendation would be for the board to formally direct staff to make the change to the voter registration form which we have done and prepare to do very shortly to make clear that these items are required." 11/28/2023 NCSBE Meeting, at 1:15:31 – 1:16:26.

c.      Mr. Cox further acknowledged, "… for some of these voters, because of the way that the form was, they just may not have submitted it, they thought it was optional." *Id*. at 1:20:22 – 1:20:50.

d.      Mr. Cox acknowledged that even if a voter was later asked to provide HAVA-compliant identification, county elections would "not necessarily update their voter registration information." Defendant Millen agreed stating, "…yeah, it doesn't happen automatically I don't think." *Id*. at 1:21:04 – 1:21:49.

e. Mr. Cox declined to verify the accuracy of the allegation in the Administrative Complaint that over 200,000 records were not compliant with Section 303 of HAVA because "… not all county board of election members and their staff enter everything as they should as these applications are submitted. So, I don't know that that number is the accurate end-all be-all number of the people who did not comply with that provision of HAVA. I don't think it is because we know just by doing some spot checking of some of these records that in their application, they actually did include that number, it just wasn't populated into the state-wide computerized database." *Id*. at 1:22:38 – 1:23:32.

f. Mr. Cox advised the NCSBE to decline to implement the remedy recommended in the Administrative Complaint to contact voters who submitted voter registration applications that did not comply with Section 303 of HAVA "to try to get their identifying information." *Id*. at 1:16:27 – 1:17:10.

g. Defendant Millen made a motion for NCSBE to resolve the Administrative Complaint "by determining that a violation of section 303 of HAVA could occur as a result of the voter registration application form failing to require an applicant to provide an identification number or indicate that they do not possess such a number." She further moved that NCSBE limit the remedy for the violations to implement "recommended changes to the voter registration application form and any related materials." *Id*. at 1:26:48 – 1:27:18.

40.     The NCSBE unanimously approved Defendant Millen's motion [11/28/2023 NCSBE Meeting, at 1:26:48 – 1:27:38], memorializing its action in a written order dated December 6, 2023.[3]

41.     Defendants have declined to take sufficient steps to cure their continuing violations of Section 303(a)(5) of HAVA such as by contacting voters who had registered using the State's non-HAVA compliant voter registration application and updating the computerized statewide voter registration list for each incomplete voter record with the voter's driver's license, if they had one, or the last four digits of their social security number, if they have one, and to assign a unique identifying number to any voters who report that they do not have a driver's license number or a social security number.

42.     Instead, through their oral motion and accompanying written order, Defendants have stated their intent to ask county election officials to update the statewide voter registration list with the missing information as individual voters appear at the polling place and present their requested identification, which they have conceded will only be done on an ad hoc basis that will not result in the accuracy of all records in the statewide voter registration list.

**CAUSE OF ACTION**

43.     Plaintiff restates and incorporates herein the allegations in Paragraphs 1 through 42 of this Complaint.

44.     Pursuant to North Carolina State law, the NCSBE is responsible for the development and implementation of the statewide voter registration list as mandated by Section 303(a) of HAVA, 52 U.S.C. § 21083(a).

---

[3] *See* https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/Orders/Other/2023%20HAVA%20Complaint%20-%20Snow.pdf.

45. Defendants have failed to take the actions necessary for the State of North Carolina to meet the requirements of Section 303(a) of HAVA. These failures include, but are not limited to, the following:

a. Defendants used a voter registration form that failed to require applicants to provide a driver's license number, for persons who have a driver's license number, or the last four digits of the social security number, for persons who do not have a driver's license number. 52 U.S.C. § 21083(a)(5)(A).

b. Defendants provided instructions for voter registration that failed to require applicants to provide a driver's license number, for persons who have a driver's license number, or the last four digits of the social security number, for persons who do not have a driver's license number. 52 U.S.C. § 21083(a)(5)(A).

c. Defendants accepted and processed voter registration applications that did not comply with Section 303(a)(5)(A) of HAVA.

d. Defendants did not assign a unique identifier to those persons whose voter registration applications indicated they did not have a driver's license or the last four digits of the social security number, as required by 52 U.S.C. § 21083(a)(5)(A).

e. After Defendants acknowledged their HAVA violations, they did not remedy the violations by contacting voters who registered using a voter registration application that did not comply with Section 303(a)(5)(A) of HAVA and who had not provided a driver's license number, for persons who have a driver's license number, or the last four digits of the social security number, for persons who do not have a driver's license number. 52 U.S.C. § 21083(a)(5)(A).

46.    As a result of the failure of the Defendants to take actions as set forth in Paragraph 45 above, upon information and belief the State of North Carolina has a significant number of voter registration records in its statewide voter registration list that do not comply with the requirements of Section 303(a) of HAVA.

47.    The failure of the Defendants to take the timely actions required to ensure that all voter registration records in North Carolina's statewide voter registration list have a driver's license number, or the last four digits of the social security number, for persons who do not have a driver's license number, or for persons who do not have these numbers, a unique identifier, as set forth above, constitutes a violation of Section 303(a)(5)(A) of HAVA, 52 U.S.C. § 21083(a)(5)(A).

48.    Unless and until ordered to do so by this Court, the Defendants will not take timely actions necessary to ensure that all voter registration records in North Carolina's statewide voter registration list meet the requirements of Section 303(a) of HAVA, 52 U.S.C. § 21083(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff United States of America prays that this Court:

A.    Declare that the Defendants are not in compliance with Section 303(a) of HAVA, 52 U.S.C. § 21083(a), with respect to implementation of HAVA's computerized statewide voter registration requirements in elections for Federal office;

B.    Enjoin the Defendants, their agents and successors in office, and all persons acting in concert with any of them from failing or refusing promptly to comply with the requirements of Section 303(a) of HAVA;

C.     Enjoin the Defendants, their agents and successors in office, and all persons acting in concert with any of them from failing or refusing to use a voter registration form that complies with the requirements of Section 303(a) of HAVA;

D.     Order the Defendants, their agents and successors in office and all persons acting in concert with any of them promptly to develop a plan, within 30 days of this Court's order, to remedy the demonstrated violations of Section 303(a) of HAVA, fully and completely, to include:

(1)     contacting all registered voters in North Carolina's statewide voter registration list that do not meet the requirements of Section 303(a) of HAVA, to obtain a driver's license number, for persons who have a driver's license number, or the last four digits of the social security number, for persons who do not have a driver's license number, and timely adding that information to the statewide voter registration list;

(2)     for registered voters who are contacted who do not report having a driver's license number or the last four digits of a social security number, assigning a unique identifier and timely adding that information the statewide voter registration list as required by 52 U.S.C. § 21083(a)(5)(A);

(3)     within 30 days of the completion of (1) and (2) filing with the Court a sworn certification that all records in the statewide voter registration list are in full compliance with Section 303(a) of HAVA and that an electronic copy of all corrected records has been provided to the United States; and

(4)     updating all voter registration materials and training materials for election officials to reflect the requirements of Section 303(a) of HAVA; and

E.     Order such other relief as the interests of justice may require.

Date: May 27, 2025

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES
Deputy Assistant
Attorney General

*/s/ James Thomas Tucker*
MAUREEN RIORDAN
Acting Chief, Voting Section
TIMOTHY F. MELLETT
JAMES THOMAS TUCKER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Telephone: (202) 307-2767
Email: james.t.tucker@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ James Thomas Tucker*
James Thomas Tucker