# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS; SAM HAYES, in his official capacity as Executive Director of the North Carolina State Board of Elections; FRANCIS X. DE LUCA, JEFF CARMON, STACY EGGERS IV, SIOBHAN O'DUFFY MILLEN, and ROBERT RUCHO, in their official capacities as Members of the North Carolina State Board of Elections; and STATE OF NORTH CAROLINA,<br><br>    Defendants. | Case No. 5:25-cv-00283-FL |

## DECLARATION OF WILLIAM DWORKIN

I, William Dworkin, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am over the age of 18, have personal knowledge of the facts below, and can competently testify to their truth.

2. I am the President of the North Carolina Alliance for Retired Americans ("the Alliance"), a 501(c)(4) nonprofit, social welfare organization incorporated in North Carolina. The Alliance has approximately 58,000 members across all of North Carolina's 100 counties. The Alliance is a chartered state affiliate of the Alliance for Retired Americans, a nationwide grassroots organization with more than 4.3 million members.

3. The Alliance's mission is to ensure social and economic justice and full civil rights for retirees. As a central part of its mission, the Alliance works to protect the rights of its members

to vote and to have their votes count. Thus, the Alliance has strong interests in ensuring that the greatest number of our members can cast a ballot, as well as in protecting policies that make voting safe, easy, and reliable for our members.

4. The Alliance undertakes a broad range of initiatives to enable its members to vote, including tabling at local events to register voters and get out the vote, canvassing before elections to educate voters about how and where to vote, and other voter turnout programming and communications.

5. As the Alliance engages members and the larger community of retired North Carolinians, it answers questions regarding voting requirements and procedures. For instance, during Alliance meetings, members discuss and learn about key issues affecting retirees (such as Social Security and Medicare) and candidate positions, as well as about when and how they can register to vote and cast their ballots.

6. Among other efforts, the Alliance develops and circulates a newsletter to educate its members about important issues facing older and retired Americans, including the registration and voting process. The Alliance regularly communicates with its members to keep them aware of issues that could impact them, their rights, and their quality of life.

7. The Department of Justice's lawsuit threatens the Alliance's core mission, including its ability to register voters and the ability of its members to remain on the rolls and successfully cast ballots. Specifically, it seeks relief requiring North Carolina election officials to contact upwards of several hundred thousand North Carolina voters who allegedly lack certain information in the statewide voter registration list and forcing these voters to provide this allegedly missing information. The Department of Justice's lawsuit assumes that every voter with an incomplete registration in the state's system necessarily failed to provide the requisite information

- 2 -
Case 5:25-cv-00283-FL    Document 7-2    Filed 06/02/25    Page 3 of 8

upon registering, but that may not be the case. In fact, many voters registered before the HAVA requirement was put in place and therefore had no obligation to provide that information in the first place. Moreover, the Alliance is aware of certain members who were previously identified as having incomplete records but who believe they provided their driver's license or social security information when they registered. The Department of Justice's lawsuit seeks to place the burden on voters to show that they are properly registered, even if the voter supplied all of the necessary information to register but HAVA was later enacted or, for one reason or another, the state's system does not reflect that the voter provided the new information sought under HAVA. And the relief the Department of Justice seeks may result in the removal of voters who do not complete whatever steps the Court orders or the Board requires.

8. For several reasons, this relief is likely to harm the Alliance and disproportionately disenfranchise its members as compared to the general public. The Alliance's membership is overwhelmingly comprised of older voters and retirees. To my knowledge, the average age is between 60 and 70 years old. Because they tend to be older, many Alliance members registered to vote prior to the enactment of federal and North Carolina laws requiring voters to provide a driver's license number or social security number information with their registrations. Accordingly, many long-registered Alliance members never had any obligation to provide the allegedly missing identification numbers on their registration forms, yet still now face the prospect of removal if the Department of Justice is granted the relief it seeks. And even those Alliance members who registered after the enactment of laws requiring provision of identifying numbers may have registered before voter records were consistently digitized and submitted to the statewide voter file. In other words, the absence of some information from the statewide voter file does not mean a voter failed to provide it.

9. Additionally, many Alliance members are likely to be wary of communications telling them that their decades-old voter registrations—under which they may have voted in dozens of elections—are in fact invalid or missing requisite information and be hesitant to provide personal identifying information (like social security numbers or driver's license numbers) to those requesting it, particularly given how common scams targeting seniors are. Unfortunately, members of the Alliance are frequently subject to attempted financial scams from robocalls, unlisted numbers, or spam calls targeting older Americans. As a result, there is deep hesitancy within our membership about answering and engaging with calls from unfamiliar or unlisted telephone numbers. Similar scams targeting older Americans are also conducted through the mail or email. Accordingly, there is a high risk that Alliance members will not respond to unexpected outreach from election officials concerning alleged problems with their voter registrations, potentially leading to their removal from the rolls despite the fact that they are lawful, eligible voters.

10. Additionally, while the Alliance's members are civically engaged and tend to vote at high rates, they also often face challenges when registering to vote and voting that do not impact other groups of people. Due to their advanced age, Alliance members often experience issues that accompany getting older, including difficulty with mobility, memory, vision, and administrative tasks. Many of our members no longer drive or regularly leave home, and so they must plan significantly ahead for tasks and other obligations, including logistics related to voter registration and voting. Thus, Alliance members face unique barriers to respond to any inquiries into their registration status and to ensure they remain registered; and if Alliance members were to be removed, it would be more difficult for them to reregister because of all of these challenges unique to older voters. For these reasons, Alliance members face particularly heightened risks from this lawsuit.

11. This is not the first time the Alliance has had to grapple with attempts to disenfranchise its members because of this alleged issue with longstanding voter registrations. During the recent contested North Carolina Supreme Court election, Judge Jefferson Griffin challenged over 60,000 voters' ballots on the basis that their registration appeared incomplete because the state's voter system did not reflect the voter's driver's license number or social security information—effectively the same issue the Department of Justice raises here. In response to Judge Griffin's challenge, the Alliance compared the list of challenged voters with its membership lists and identified dozens of Alliance members who were at risk of disenfranchisement in that election from Judge Griffin's protests.

12. The risk of wrongful removals and disenfranchisement in this case is even greater. Whereas Judge Griffin challenged roughly 60,000 voters who cast mail ballots in a particular election, the Department of Justice is challenging the registration status of *every single* North Carolina voter who happens to have missing information in the statewide voter registration system. Accordingly, we believe that a significantly larger number of Alliance members will be impacted by the Department of Justice's lawsuit.

13. As we did in response to Judge Griffin's protests, the Alliance will have to undertake burdensome and costly efforts to protect its members in response to the Department of Justice's suit. For example, in response to Judge Griffin's challenges, we reached out to the Alliance members that we identified as at risk to inform them that their ballots and registrations were being targeted. Notably, every single one of the Alliance members we contacted is a long-time and qualified North Carolina voter who never previously faced a problem voting under their current registration. We will now have to undertake similar, possibly more far-ranging efforts if the Department of Justice succeeds in this case. Given our limited resources, this work—which

may require contacting hundreds of members—will limit our ability to engage in other mission-critical activities, such as engaging members in key policy issues facing older and retired Americans.

14. The Alliance was permitted to intervene in Judge Griffin's lawsuit in view of the risk of harm to the organization and its members. *See* Text Order, *Griffin v. N.C. State Bd. of Elections*, No. 5:24-cv-00724 (E.D.N.C. Dec. 26, 2024) (granting the Alliance intervention); *Griffin v. N.C. State Bd. of Elections*, No. 25-1020 (4th Cir. Feb. 4, 2025) (granting the Alliance intervention in appeal and underlying district court case, No. 5:24-cv-0731-M-RJ). Given the significantly overlapping legal issues in this case, we seek intervention here to prevent the same harm that the Alliance helped successfully stave off in Judge Griffin's election contest.[1] *See Griffin v. N. Carolina State Bd. of Elections*, No. 5:24-CV-00699-M, 2025 WL 1292530, at *7, *35 (E.D.N.C. May 5, 2025) (granting judgment to the Alliance and thanking all parties, including the Alliance, for "thoughtful and comprehensive arguments" that "significantly aided the court's decisional process").

15. I am deeply concerned that, if the Department of Justice succeeds in this litigation, it will make it much harder for the Alliance members, and other retirees whose interests we seek to protect, to vote in future elections. If our members are unable to vote in future elections, our

---

[1] The Alliance has also filed and intervened in other litigation to protect our members' ability to vote. *See, e.g., N.C. All. for Retired Ams. v. N.C. State Bd. of Elections*, Case No. 20-CVS-8881 (N.C. Super. Ct. Oct. 2, 2020) (Alliance challenged restrictive election procedures implemented during the COVID-19 pandemic); *see also Deas v. North Carolina State Board of Elections*, Case No. 22-CVS-11290 (Wake Cnty. Sup. Ct. Oct. 26, 2022) (granting intervention to Alliance in case involving voting rules); *In re Appeal of Declaratory Ruling from the State Board of Elections*, Case No. 22-CVS-10520 (Wake Cnty. Sup. Ct. Dec. 19, 2022) (same); *Moore v. Circosta*, No. 1:20CV911, 2020 WL 6597291, at *2 (M.D.N.C. Oct. 8, 2020) (same).

mission to ensure social and economic justice and full civil rights for retirees will be thwarted and the rights of our members will be irretrievably diminished.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 6/2/2025

*Bill Dworkin*

William Dworkin
President
North Carolina Alliance for Retired Americans