IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS; SAM HAYES, in his official capacity as Executive Director of the North Carolina State Board of Elections; FRANCIS X. DE LUCA, JEFF CARMON, STACY EGGERS IV, SIOBHAN O'DUFFY MILLEN, and ROBERT RUCHO, in their official capacities as Members of the North Carolina State Board of Elections; and STATE OF NORTH CAROLINA,<br><br>        Defendants. | Civil No. 5:25-cv-00283-M-RJ |

## PLAINTIFF UNITED STATES' OPPOSITION TO MOTION TO INTERVENE BY THE NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS

Plaintiff United States of America opposes the Motion to Intervene as a Defendant by the North Carolina Alliance for Retired Americans ("Proposed Intervenor"), Doc. 7, for the reasons set forth in the accompanying Memorandum of Law.

Proposed Intervenor has failed to establish sufficient grounds for intervention, as it lacks standing under controlling authority, it presents a generalized interest in preventing the United States from obtaining relief from Defendants' violations of Section 303(a)(5) of the Help America Vote Act, 52 U.S.C. § 21083(a)(5), and its speculative basis for intervention fails to articulate any concrete grievance or interest that has been or may be violated. Proposed Intervenor has failed to

meet its burden of demonstrating that it meets the standards for intervention as of right, as set forth in Fed. R. Civ. P. 24(a), or for permissive intervention, as set forth in Fed. R. Civ. P. 24(b).

Accordingly, Plaintiff United States of America respectfully requests that the Court deny the Motion to Intervene by Proposed Intervenor the North Carolina Alliance for Retired Americans (Doc. 7).

Respectfully submitted this 23rd day of June, 2025,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES
Deputy Assistant
Attorney General

*/s/ James Thomas Tucker*
MAUREEN RIORDAN
Acting Chief, Voting Section
TIMOTHY F. MELLETT
JAMES THOMAS TUCKER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Telephone: (202) 307-2767
Email: james.t.tucker@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

NORTH CAROLINA STATE BOARD OF
ELECTIONS; SAM HAYES, in his official
capacity as Executive Director of the North
Carolina State Board of Elections; FRANCIS
X. DE LUCA, JEFF CARMON, STACY
EGGERS IV, SIOBHAN O'DUFFY MILLEN,
and ROBERT RUCHO, in their official
capacities as Members of the North Carolina
State Board of Elections; and STATE OF
NORTH CAROLINA,

        Defendants.

Civil No.  5:25-cv-00283-M-RJ

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF UNITED STATES' OPPOSITION TO MOTION TO INTERVENE BY THE NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS

# TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 1

LEGAL STANDARDS ..................................................................................................... 2

ARGUMENT ..................................................................................................................... 3

I.   THE PROPOSED INTERVENOR DOES NOT MEET THE STANDARD FOR

INTERVENTION AS OF RIGHT ............................................................................ 3

   A.   The Proposed Intervenor Has No Interest in This Action ................................. 3

      1.   Proposed Intervenor Has No Interest In This Matter Because HAVA Confers No

Private Right of Action for Section 303(a) and Limits Defendants to States or Jurisdictions

Responsible for Implementing That Section ........................................................................ 4

      2.   The Complaint and Statutory Language Refute Proposed Intervenor's Speculation

that Voters Risk Being "Kicked Off the Rolls" as a Result of this Lawsuit ....................... 7

      3.   Proposed Intervenor's Interest of Protecting Members Who are Voters Fails to Show

a Particularized Harm Differing from Any Other Members of the Public. ........................ 9

   B.   The Proposed Intervenor Cannot Show an Interest That May Be Impaired by the

Disposition of this Action. ................................................................................. 11

   C.   The Proposed Intervenor Cannot Show Inadequate Representation ............................. 12

II.   THE PROPOSED INTERVENOR DOES NOT MEET THE STANDARD FOR

PERMISSIVE INTERVENTION ............................................................................ 14

CONCLUSION ................................................................................................................ 16

## TABLE OF AUTHORITIES

**Cases**

*Berger v. North Carolina State Conf. of NAACP*, 597 U.S. 179 (2022)................................... 2, 13

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008).................................................................. 5

*Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989) ........................................................... 11

*Commonwealth of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214 (4th Cir. 1976) ............. 12, 13

*Diamond v. Charles*, 476 U.S. 54 (1986) .................................................................................... 3

*Donaldson v. United States*, 400 U.S. 517 (1971) ...................................................................... 3

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) .............................................................................. 5

*Green v. Bell*, No. 3:21-CV-00493, 2023 WL 2572210 (W.D.N.C. Mar. 20, 2023) .................. 13

*Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838 (4th Cir. 1999) ................................................ 2

*Laube v. Campbell*, 215 F.R.D. 655 (M.D. Ala. 2003)................................................................ 9

*League of Women Voters of Va. v. Virginia State Bd. of Elections*, 458 F. Supp. 3d 460 (W.D. Va. 2020)................................................................................................................... 4, 11, 15

*ManaSota–88, Inc. v. Tidwell*, 896 F.2d 1318 (11th Cir.1990) .................................................. 9

*Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775 (E.D. Va. 1989)..................................................................................................................... 9

*Middlesex Cnty. Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1 (1981)................. 6

*Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, No. 5:24-cv-00547-M, 2024 WL 4349904 (E.D.N.C. Sept. 30, 2024)........................................................................... passim

*Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 754 F. Supp. 3d 664 (E.D.N.C.), *rev'd and remanded on other grounds*, 120 F.4th 390 (4th Cir. 2024). ................................. 10

*Richman v. First Woman's Bank*, 104 F.3d 654 (4th Cir. 1997) ................................................... 2

*Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013).......................................................................... passim

*Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991)................................................................ 2, 3, 11, 12

*Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) ................................................. 6

*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ........................................... 12, 13

*United States v. Alabama,* No. 2:06-CV-392-WKW, 2006 WL 2290726 (M.D. Ala. Aug. 8,
    2006) ......................................................................................................................... 7, 11

*United States v. New York State Board of Elections,* 312 Fed. App'x 353 (2d Cir. 2008)............. 7

*United States v. Smith*, 452 F.3d 323 (4th Cir. 2006) ..................................................................... 3

**Statutes**

52 U.S.C. § 20507................................................................................................................... 9, 13

52 U.S.C. § 21083 ............................................................................................................... passim

52 U.S.C. § 21111 ..................................................................................................................... 4, 5

52 U.S.C. § 21112 ........................................................................................................................ 4

Pub. L. No. 107-252, 116 Stat. 1666 ......................................................................................... 5

**Rules**

Fed. R. Civ. P. 24 .............................................................................................................. passim

**Legislative Materials**

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002) ....................................................................... 5

**Secondary Materials**

7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1909 (3d ed. 2007) .............. 14

## BACKGROUND

On May 27, 2025, the United States filed its Complaint in this action, alleging that the State of North Carolina has not complied with the statewide centralized voter registration database requirements of Section 303(a)(5) of the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 21083(a)(5). Compl. ¶¶ 34-42, Doc. 1 at 10-14. Specifically, the United States alleges that North Carolina: until recently used a voter registration form and instructions that failed to require applicants to provide a driver's license number, or the last four digits of the social security number for persons who do not have a driver's license number; accepted and processed voter registration applications that do not comply with HAVA; has not assigned a unique identifier to all voter registration applications that indicated they did not have a driver's license or social security number; and has not taken the timely actions required by HAVA to ensure that all voter registration records are entered into its statewide centralized voter registration database and to otherwise meet the requirements of Section 303(a)(5)(A), 52 U.S.C. § 21083(a)(5)(A). Compl., ¶¶ 44-48, Doc. 1 at 14-16. North Carolina, through its State Board of Elections ("NCSBE"), acknowledged its HAVA violations in a meeting on November 28, 2023, but only took steps to correct the voter registration form and instructions prospectively for future applicants, as stated in a unanimous order by the NCSBE on December 6, 2023. *Id.* at ¶¶ 39-40, ECF No. 1 at 11-14. North Carolina has recognized that after HAVA's effective date, a significant number of voters either were registered without information required by the Act or if that information was later obtained at the polls, it was not "populated into the state-wide computerized database" as required by Section 303(a). *Id.* After North Carolina failed to timely correct its known violations of Section 303, this HAVA enforcement action followed.

On June 2, 2025, the North Carolina Alliance for Retired Americans ("Proposed Intervenor") filed the Motion to Intervene as a Defendant that is presently before the Court, Doc. 7 and Br. in Supp. of Proposed Intervenor's Mot. To Intervene, Doc. 8 ("Proposed Intervenor's Br."). Proposed Intervenor has failed to establish sufficient grounds for intervention, as it lacks standing under controlling authority, it presents a generalized interest in preventing the United States from obtaining relief from Defendants' violations of Section 303(a)(5) of HAVA, 52 U.S.C. § 21083(a)(5), and its speculative basis for intervention fails to articulate any concrete grievance or interest that has been or may be violated. Proposed Intervenor has failed to meet its burden of demonstrating that it meets the standards for intervention as of right, as set forth in Federal Rule of Civil Procedure 24(a), or for permissive intervention, as set forth in Federal Rule of Civil Procedure 24(b). For the reasons specified below, its motion should be denied.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 24 provides the standards for intervention of right and permissive intervention. Intervention of right is appropriate if the proposed intervenor: (1) files in a timely manner; (2) demonstrates an interest in the action; (3) shows that the interest may be impaired by the disposition of the action; and (4) has an interest not otherwise adequately protected. Fed. R. Civ. P. 24(a)(2); *see also Berger v. North Carolina State Conf. of NAACP*, 597 U.S. 179, 190 (2022) (same); *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991) (same). Proposed Intervenor bears the burden of demonstrating it has a right to intervene. *Richman v. First Woman's Bank*, 104 F.3d 654, 659 (4th Cir. 1997). Failure to meet any one of these requirements requires denial of the motion. *See Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839-40 (4th Cir. 1999) ("Applicants to intervene as of right must meet all four… requirements…." and the district court "need not address… the other requirements of Rule 24(a)" if the applicant fails to meet any

one of those requirements).

Permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2) may be appropriate if the proposed intervenor submits a timely motion and states a claim or defense which has a common question of law or fact with the action. "Critically, the rule also states that '[i]n exercising its discretion' to permit intervention, a district court 'must consider whether the intervention will unduly delay… the adjudication.'" *Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)(3)). A district court is vested with broad discretion to decide a motion for permissive intervention because "'[q]uestions of trial management are quintessentially the province of the district courts.'" *Id.* at 350 (quoting *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006)).

## **ARGUMENT**

## I.    THE PROPOSED INTERVENOR DOES NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT.

### A.    The Proposed Intervenor Has No Interest in This Action.

To support intervention, the intervenor's interest must be a particularized interest rather than a general grievance. *See* Fed. R. Civ. P. 24(a)(2). That necessitates "a significantly protectable interest," *Donaldson v. United States*, 400 U.S. 517, 531 (1971), requiring that the intervenor establish standing to bring or defend the claim before the district court. *See generally Diamond v. Charles*, 476 U.S. 54, 66–67 (1986) ("Article III requires more than a desire to vindicate value interests. It requires an 'injury in fact' that distinguishes 'a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem.'"). The intervenor must show that they "stand to gain or lose by the direct legal operation of the district court's judgment" on the complaint. *Teague v. Bakker*, 931 F.2d at 261. "An 'interest' shared by all members of an electorate is not 'sufficient[ly particularized] to meet the requirements of Rule

3

24(a).'" *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, No. 5:24-cv-00547-M, 2024 WL 4349904, at *2 (E.D.N.C. Sept. 30, 2024) (denying motion to intervene by North Carolina Conference of the NAACP) (quoting *League of Women Voters of Va. v. Virginia State Bd. of Elections*, 458 F. Supp. 3d 460, 466 (W.D. Va. 2020)). Proposed Intervenor cannot meet its burden for three reasons: HAVA confers no right for private organizations or individuals to be party plaintiffs or defendants in this action; the Complaint and Section 303(a)(5) expressly refute their speculative concern of an imminent voter purge; and they have failed to identify any particularized harm that differs from that of any other member of the public.

1.  <u>Proposed Intervenor Has No Interest In This Matter Because HAVA Confers No Private Right of Action for Section 303(a) and Limits Defendants to States or Jurisdictions Responsible for Implementing That Section.</u>

HAVA does not create a private right of action. The only enforcement provision in HAVA which authorizes a cause of action in federal court is found at Section 401, which provides that:

> The Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083, and 21083a of this title [Sections 301, 302, 303, and 303a of HAVA].

52 U.S.C. § 21111. Aside from that right of action, granted exclusively to the Attorney General of the United States, no other explicit right of action in federal court exists to enforce the provisions of HAVA. The clear text of the statute is reinforced by its legislative history. Senator Dodd of Connecticut – a HAVA conferee and sponsor – openly lamented the lack of a private right of action in HAVA, observing that such participation was limited to the participation through the Act's administrative hearing process in Section 402 of the Act, 52 U.S.C. § 21112:

> While I would have preferred that we extend the private right of action afforded private parties under [the] NVRA, the House simply would not entertain such an enforcement provisions. Nor would they accept Federal judicial review of any

4

> adverse decision by a State administrative body. However, the state-based administrative procedure must meet basic due process requirements and afford an aggrieved party a hearing on the record if they so choose.

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002). Consequently, private parties may not enforce Section 303(a)(5). *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (per curiam) ("Respondents, however, are not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 in an action brought by a private litigant to justify the issuance of a TRO."); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) (where "the text and structure of a statute … provide no indication that Congress intends to create new individual rights, there is no basis for a private suit.").

The statutory text likewise limits who may be a defendant. As HAVA's preamble makes clear, the provisions of Title III of the Act "establish minimum election administration standards for States and units of local government … responsibl[e] for the administration of Federal elections." Pub. L. No. 107-252, 116 Stat. 1666; *compare with* Proposed Intervenor's Br. at 19 (Proposed Intervenor recognizes "HAVA imposes a host of obligations and duties on state election officials, including Defendants."). Proper party defendants in a Section 303(a)(5) enforcement action therefore are limited to "any State or jurisdiction." 52 U.S.C. § 21111. Under Section 303(a), "State or jurisdiction" includes their election officials who are responsible for implementing the statutory mandates. *See*, *e.g.*, 52 U.S.C. § 21083(a)(1)(A) ("…each *State, acting through the chief State election official*, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list….") (emphasis added); *id.* at § 21083(a)(1)(A)(vi) ("…All voter registration information obtained by *any local election official in the State* shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official…") (emphasis

added); *id.* at § 21083(a)(5)(A)(i) ("an application for voter registration for an election for Federal office may not be accepted or processed by a *State* unless the application includes" the identifying number required by Section 303) (emphasis added); *id.* at § 21083(a)(5)(A)(ii) ("... the *State* shall assign the applicant a number which will serve to identify the applicant for voter registration purposes...") (emphasis added); *id.* at § 21083(a)(5)(A)(iii) ("The *State* shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, in accordance with State law.") (emphasis added). To summarize, Section 303(a)(5) of HAVA regulates election administrators responsible for timely updating North Carolina's computerized statewide voter registration list for Federal offices; the State and those officials are the only ones authorized to be defendants.

"In the absence of strong indicia of a contrary Congressional intent," the Supreme Court has stated, "we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cnty. Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981). "Where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Congress specifically limited the parties in litigation over HAVA's computerized statewide voter registration list requirements to the Attorney General of the United States, to enforce Section 303(a)(5), and States, jurisdictions, and their responsible election officials, as defendants. Consequently, Proposed Intervenor is foreclosed from intervening as a party, including in the role of a defendant.

Federal courts have not permitted intervention by private parties and even for some election boards in previous Section 303 enforcement actions brought by the Attorney General. In *United States v. Alabama*, the Chairs of the Alabama Democratic Executive Committee and the Alabama

6

Democratic Conference moved to intervene for the purpose of suggesting special masters to remedy the Section 303 violation. No. 2:06-CV-392-WKW, 2006 WL 2290726, at *1 (M.D. Ala. Aug. 8, 2006). The court denied their motions, concluding that "HAVA does not confer a private right of action. Congress granted explicitly to the Attorney General of the United States the right of enforcement of Sections 301, 302, and 303 of HAVA." *Id.* at *4. Therefore, the court found that the proposed intervenors did not have a "legally protectable" interest under HAVA and denied their motion. *Id.* Similarly, in *United States v. New York State Board of Elections*, the district court denied motions to intervene as defendants by the Nassau County Board of Elections and the Nassau County Legislature, despite both having some responsibilities under HAVA for administering the State's computerized statewide voter registration list. *See* 312 Fed. App'x 353 (2d Cir. 2008).

Here, the Proposed Intervenor is an organization that says it represents some North Carolina voters, none of whom bears responsibility for implementing HAVA's requirements. Neither Proposed Intervenor nor its individual members fall within the plain language of HAVA, in which Congress clearly articulated who may be parties to Section 303 enforcement actions, whether as plaintiffs or as defendants. As such, Proposed Intervenor has no legally protectable interest and is not entitled to intervene. Contrary to what the Proposed Intervenor argues, Proposed Intervenor's Br. at 16, that conclusion is not altered merely because it was permitted to intervene along with others in actions raising state law claims brought by private parties not authorized to enforce Section 303(a)(5).

2.    The Complaint and Statutory Language Refute Proposed Intervenor's Speculation that Voters Risk Being "Kicked Off the Rolls" as a Result of this Lawsuit.

The dire consequences Proposed Intervenor contemplates find no support in the Complaint nor in HAVA. The Complaint states very clearly that the United States is seeking relief in this litigation that is narrowly focused on bringing Defendants into compliance with HAVA's election

7

administration requirements for maintaining a computerized statewide voter registration list for Federal elections. Specifically, the Complaint requests that within thirty days of a Court finding of liability, the Defendants develop a plan "to remedy the demonstrated violations of Section 303(a) of HAVA, fully and completely." Doc. 1, at 17. The requested relief encompasses the requirements for all voters registered after HAVA's effective date[1] to provide their current driver's license number, or the last four digits of their social security number if they do not have one. *See* 52 U.S.C. § 21083(a)(5)(A)(i) (providing that "an application for voter registration for an election for Federal office may not be accepted or processed by a State" without one of those numbers, if the applicant has one).[2] For those registrants who lack a driver's license or social security number, the Complaint further requests the State to assign "a number which will serve to identify the applicant for voter registration purpose," as required by 52 U.S.C. § 21083(a)(5)(A)(ii). Doc. 1, at 17. Finally, Defendants are asked to report to the Court when they have updated the statewide registration list to comply with Section 303(a)(5), and to provide the United States with the updated list. *Id.*

Notwithstanding the requested relief, which tracks Section 303(a)(5)'s requirements, Proposed Intervenor maintains that "[t]he inevitable consequence of the federal government's lawsuit is clear: voters who cannot be contacted stand to be kicked off the rolls, even if they complied with HAVA when they registered or never had to comply with HAVA at all." Proposed

---

[1] *See* 52 U.S.C. § 21083(d)(1) (providing that the effective date for Section 303's computerized statewide voter registration list requirements was on and after January 1, 2004, unless a waiver was granted that made it effective for a State on and after January 1, 2006).

[2] Defendants have acknowledged that some registered voters already may have provided the missing information, but that "it just wasn't populated into the state-wide computerized database" by county elections officials. Compl., Doc. 1 at 12-13. If Defendants already have the identification required by HAVA for some registrants they will be able to update those records without further action such as reaching out to individual voters, some of whom Proposed Intervenor maintains it represents.

Intervenor's Br. at 2. The Complaint does not request this relief, and as important, such an action is precluded by HAVA. The plain language of Section 303(a)(2) of HAVA requires that when "[t]he appropriate State or local election official… perform[s] list maintenance with respect to the computerized list on a regular basis… (i) If an individual is to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act of 1993" ("NVRA").[3] 52 U.S.C. § 21083(a)(2). Nothing the United States has alleged changes the State's obligation under Section 303(a)(2) of HAVA, which precludes the Proposed Intervenor's unfounded assessment from occurring in this litigation.

Speculative injury "does not rise to the level required for intervention as a matter of right." *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775, 779 (E.D. Va. 1989); *see also Laube v. Campbell*, 215 F.R.D. 655, 657 (M.D. Ala. 2003) ("Interests that are contingent upon some future events and which are 'purely a matter of speculation' are not 'the kind of protectable interest … necessary to support intervention as of right.'") (quoting *ManaSota–88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir.1990). Even if Proposed Intervenor had a legally protectable interest under Section 303 of HAVA, which it does not, its concern about an arbitrary voter purge is imagined, speculative, and contrary to federal law.

3.      Proposed Intervenor's Interest of Protecting Members Who are Voters Fails to Show a Particularized Harm Differing from Any Other Members of the Public.

Proposed Intervenor next argues that "[t]he right to vote is unquestionably a 'significantly protectable interest' that satisfies Rule 24(a)." Proposed Intervenor's Br. at 15. In support,

---

[3]  The NVRA includes several requirements that must be met before a voter may be removed from a voter registration list for Federal elections. *See* 52 U.S.C. § 20507. Like HAVA, the NVRA does not permit Proposed Intervenor's imagined action of registered voters being arbitrarily "kicked off the rolls." *See id.*

Proposed Intervenor recites several cases that implicated the individual right to vote. *See id.* at 15-18.

Proposed Intervenor is mistaken. Proposed Intervenor fundamentally misapprehends the crucial difference between regulation of election administrators responsible for timely updating North Carolina's computerized statewide voter registration list for Federal offices, as provided by Section 303(a)(5) of HAVA, and an alleged impairment of the right of individual registered voters to cast ballots. Adding an identification number as HAVA requires does not impair the right to vote. Moreover, none of the decisions cited by Proposed Intervenor involved a Section 303(a)(5) enforcement action brought by the United States. In fact, in at least one of those decisions (cited by Proposed Intervenor on page 16 of its brief), *Republican National Committee v. North Carolina State Board of Elections*, the motion to intervene was denied. *See* 2024 WL 4349904, at *4 (E.D.N.C. Sept. 30, 2024). In that same case, the Court dismissed with prejudice a Section 303(a)(5) claim that "fail[ed] on the merits" because it was brought by a private party and HAVA "provides no private right of action." *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 754 F. Supp. 3d 664, 674 (E.D.N.C.), *rev'd and remanded on other grounds*, 120 F.4th 390 (4th Cir. 2024). Therefore, Proposed Intervenor's authority is inapposite.

District courts routinely deny motions to intervene, even in cases unlike this one where the individual right to vote is implicated. As explained in a case previously cited with approval by the Court, *see Republican Nat'l Comm.*, 2024 WL 4349904, at *2, "courts that have addressed intervention motions from similarly situated prospective intervenors... have regularly denied intervention as of right under Rule 24(a)." *League of Women Voters of Va.*, 458 F. Supp. 3d at 465 (collecting citations). "There is nothing that distinguishes Prospective Intervenors' interest in this case from that of any other eligible voter in [North Carolina]. Indeed, as the Prospective

10

Intervenors themselves argue," *id.*, "'voting… is regarded as a fundamental political right.'" Proposed Intervenor's Br. at 15 (citation omitted). "Courts are typically disinclined to allow intervenors who merely assert a 'generalized public policy interest shared by a substantial portion of the population.'" *League of Women Voters of Va.*, 458 F. Supp. 3d at 465 (collecting citations). "[D]espite its 'personal' nature, the right to vote… is no different as between any other eligible [North Carolinian], and indeed, any other eligible American. It may be personal, but it is also *universal* to those that qualify for the franchise." *Id.* (emphasis in original). Proposed Intervenor has no interest in this case, which involves regulation of administration of Federal elections and does not implicate any individual rights.

### B. The Proposed Intervenor Cannot Show an Interest That May Be Impaired by the Disposition of this Action.

Next, Proposed Intervenor is required to establish it has an interest that may be impaired by the disposition of the action. *See* Fed. R. Civ. P. 24(a)(2); *Teague*, 931 F.2d at 260-61. In this factor, "'[t]he focus ... is on whether the proposed intervenor would suffer a "practical disadvantage or impediment" if not permitted to intervene.'" *Republican Nat'l Comm.*, 2024 WL 4349904, at *2. "This requirement is 'intimately related' to the alleged interest sought to be protected" by the Proposed Intervenor. *United States v. Alabama*, 2006 WL 2290726, at *5 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)); *see also Republican Nat'l Comm.*, 2024 WL 4349904, at *2 ("If a third party satisfies the first factor of Rule 24(a), it often follows that participation as a party is necessary to protect that interest.") (citation omitted). Proposed Intervenor cannot make its required showing.

For the same reasons explained above, *see* Section IA, Proposed Intervenor has no interest because HAVA confers no right to be a party in this action. Similarly, individual voters cannot be harmed by the outcome of this litigation because the United States is not seeking, nor will federal

11

law allow, the automatic voter purge Proposed Intervenor imagines. Thus, there is no interest that Proposed Intervenor could possibly seek to protect in this litigation other than the generalized interest of all North Carolinians, and indeed of all Americans, in the fair and equitable administration of elections. Without an interest, Proposed Intervenor's claims of impairment of that interest must fail.

## C. The Proposed Intervenor Cannot Show Inadequate Representation.

This Court previously summarized Proposed Intervenor's burden in demonstrating "'that the present litigants fail adequately to represent their interests.'" *Republican Nat'l Comm.*, 2024 WL 4349904, at *2 (quoting *Teague*, 931 F.2d at 262). This showing may entail different burdens depending on the circumstances. Generally, "the burden… 'should be treated as minimal.'" *Id.* (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). "But '[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented'"[4] *Id.* (quoting *Commonwealth of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)). "When a movant and party share the same objective, 'the [movant] must demonstrate adversity of interest, collusion, or nonfeasance.'" *Id.* (quoting *Westinghouse*, 542 F.2d at 216). "Further, when the movant shares the same objective as a government party, 'a more exacting showing of inadequacy should be required.'" *Id.* (quoting *Stuart*, 706 F.3d at 351).

This Court likewise previously found that with respect to a challenge under state law to North Carolina's election administration procedures, that the Proposed Intervenor has "the same ultimate objective" as Defendants: "protecting the right to vote for all eligible North Carolina

---

[4] This presumption of adequacy of representation applies here because Proposed Intervenor is not "a duly authorized state agent" who is "seek[ing] to intervene to defend a state law." *Berger*, 597 U.S. at 197.

voters." *Republican Nat'l Comm.*, 2024 WL 4349904, at *3. As the Court explained:

> This objective is imposed on Defendants as a matter of law. 52 U.S.C. § 20507(a)(1) ("In the administration of voter registration for elections for Federal office, each State shall ... ensure that any eligible applicant is registered to vote in an election"); 52 U.S.C. § 21083(a)(4)(B) ("The State election system shall include... '[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters.' "); *Green v. Bell*, No. 3:21-CV-00493, 2023 WL 2572210, at *6 (W.D.N.C. Mar. 20, 2023) (denying intervention based on finding that Defendant Karen Bell could adequately represent interests of proposed intervenors because she is "authorized to further and protect the interest that North Carolina voters have in the enforcement of" federal election law).... Just because Defendants may have additional objectives (such as the orderly administration of elections)... does not mean that the existing parties' interests do not "overlap fully" with the interest of Proposed Intervenors in remaining on the voter registration list for the 2024 election. *Berger*, 597 U.S. at 197.

*Id.* As a result, "[g]iven the overlap of objectives, 'a presumption arises that'" Proposed Intervenor's "'interests are adequately represented.'" *Id.* (quoting *Westinghouse*, 542 F.2d at 216). "They therefore 'must demonstrate adversity of interest, collusion, or nonfeasance.' The court need not impose *Stuart*'s 'more exacting showing of inadequacy,' *Stuart*, 706 F.3d at 351, because here" Proposed Intervenor has "not even made a 'minimal' showing." *Republican Nat'l Comm.*, 2024 WL 4349904, at *3 (quoting *Trbovich*, 404 U.S. at 538 n.10).

The unrealized concerns that Proposed Intervenor muses might occur, *see* Proposed Intervenor's Br. at 3, 20-21, amount to the possibility of "'divergent approaches to the conduct of the litigation'" that "is not enough to rebut the presumption of adequacy." *Stuart*, 706 F.3d at 353 (internal cite omitted) (collecting cases). "'A mere difference of opinion concerning the tactics with which the litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party.'" *Id.* (quoting 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1909 (3d ed. 2007)). As the Fourth Circuit explained in *Stuart*:

> Nor could it be any other way. There will often be differences of opinion among lawyers over the best way to approach a case. It is not unusual for those who agree in principle to dispute the particulars. To have such unremarkable divergences of view sow the seeds for intervention as of right risks generating endless squabbles at every juncture over how best to proceed. There is much to be said, frankly, for simplifying rather than complicating the litigation process.

706 F.3d at 354. Those concerns are equal, if not greater, in this litigation. Proposed Intervenor suggests it will inject into this case separate matters involving a state supreme court election and issues under state law that are immaterial to the regulation of North Carolina's computerized statewide voter registration list for Federal elections under HAVA. *See* Proposed Intervenor's Br. at 1-2, 5-8. Proposed Intervenor has failed to demonstrate a right to intervention under Rule 24(a)(2).

## II.     THE PROPOSED INTERVENOR DOES NOT MEET THE STANDARD FOR PERMISSIVE INTERVENTION.

Rule 24(b)(2) intervention should be denied for the same reasons the Court previously enunciated in *Republican National Committee v. North Carolina State Board of Elections*. *See* 2024 WL 4349904, at *4. Permissive intervention requires more than just a timely motion and raising a "defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2)(1)(B). The Court also must consider "'whether the intervention will unduly delay… the adjudication.'" *Stuart*, 706 F.3d at 355 (quoting Fed. R. Civ. P. 24(b)(3)). As of this filing, at least two other groups of private litigants have sought to intervene, proposed intervenor the Democratic National Committee, Doc. 34, and proposed intervenors including the League of Women Voters of North Carolina and the NAACP North Carolina State Conference, *see* Doc. 39, in addition to the Proposed Intervenor. *See* Doc. 7. "[A]dding three groups of intervenors" – and possibly several others – "would necessarily complicate the discovery process and consume additional resources of the court and the parties." *Stuart*, 706 F.3d at 355. And in doing so it would

14

impede, not advance, this litigation. The Proposed Intervenor has no standing to assert any claim or defense in this Section 303(a)(5) litigation and therefore could add nothing to the Court's consideration of the United States' claim. At best, "'intervention is likely only to result in duplicative briefing.'" *Republican Nat'l Comm.*, 2024 WL 4349904, at *4. At worst, it will inject into this case "unremarkable divergences of view" about litigation strategy that risks "generating endless squabbles at every juncture over how best to proceed." *Stuart*, 706 F.3d at 354.

The Court previously observed, "granting intervention under the circumstances would 'open the floodgates on this lawsuit to any voter in the state' who registered to vote without providing their driver's license number or the last 4 digits of their social security number." *Republican Nat'l Comm.*, 2024 WL 4349904, at *4 (citing *League of Women Voters of Va.*, 458 F. Supp. 3d at 466). "There is much to be said, frankly, for simplifying rather complicating the litigation process," *Stuart*, 706 F.3d at 354, and to avoid "converting this lawsuit into a public forum." *League of Women Voters of Va.*, 458 F. Supp. 3d at 466.

Denying permissive intervention will not leave the Proposed Intervenor without recourse. It would "retain the ability to present [its] views… by seeking leave to file" an amicus brief. *Stuart*, 706 F.3d at 355. That is an especially appropriate means for Proposed Intervenor to weigh in, given the statements in its brief showing it has little more than a speculative, generalized interest in this HAVA election administration case. "While a would-be intervenor may prefer party status to that of friend-of-the-court, the fact remains that amici often make useful contributions to litigation. The availability of such alternative avenues of expression reinforces… [the] disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto." *Id.*

Accordingly, the Court should deny permissive intervention to Proposed Intervenor.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the

Motion to Intervene by Proposed Intervenor the North Carolina Alliance for Retired Americans

(Doc. 7).

Respectfully submitted this 23rd day of June, 2025,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MICHAEL E. GATES
Deputy Assistant
Attorney General

*/s/ James Thomas Tucker*
MAUREEN RIORDAN
Acting Chief, Voting Section
TIMOTHY F. MELLETT
JAMES THOMAS TUCKER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Telephone: (202) 307-2767
Email: james.t.tucker@usdoj.gov

16

## CERTIFICATE OF WORD COUNT PURSUANT TO LOCAL RULE 7.2(f)

I hereby certify on June 23, 2025, that this Memorandum complies with Local Rule 7.2(f), in that the word count function of Microsoft Word shows the brief to contain 5,044 words, excluding those portions of the brief permitted to be excluded by the rule.

/s/ James Thomas Tucker
James Thomas Tucker
JAMES THOMAS TUCKER
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Telephone: (202) 307-2767
Email: james.t.tucker@usdoj.gov

Counsel for Plaintiff United States of America

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ James Thomas Tucker
James Thomas Tucker
JAMES THOMAS TUCKER
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Telephone: (202) 307-2767
Email: james.t.tucker@usdoj.gov

Counsel for Plaintiff United States of America
