IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:25-CV-00283-M

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NORTH CAROLINA STATE BOARD OF ) | **DEFENDANTS'** |
| ELECTIONS; SAM HAYES, in his official ) | **RESPONSE IN OPPOSITION TO** |
| capacity as Executive Director of the North ) | **MOTIONS TO INTERVENE** |
| Carolina State Board of Elections; FRANCIS ) | |
| X. DE LUCA, JEFF CARMON, STACY ) | **[D.E. 7, 34, 39]** |
| EGGERS IV, SIOBHAN O'DUFFY ) | |
| MILLEN, and ROBERT RUCHO, in their ) | |
| official capacities as Members of the North ) | |
| Carolina State Board of Elections; and ) | |
| STATE OF NORTH CAROLINA, ) | |
| ) | |
| Defendants. ) | |

Defendants North Carolina State Board of Elections, Sam Hayes, in his official capacity as Executive Director of the State Board of Elections and Francis X. De Luca, Jeff Carmon, III, Stacy Eggers, IV, Siobhan O'Duffy Millen, and Robert Rucho, sued in their official capacities as Members of the State Board of Elections, and the State of North Carolina (collectively "State Defendants"), through undersigned counsel, hereby provide this response in opposition to all three motions to intervene filed by North Carolina Alliance for Retired Americans ("NC ARA") [D.E. 7], Democratic National Committee ("DNC") [D.E. 34], and Gabriela Adler-Espino, Rani Dasi, Mary Kay Heling, Audrey Meigs, Larry Repanes, Amy Grace Bryant, Ralim Allston, Kemeka Sidbury, the NAACP North Carolina State Conference, and the League of Women Voters of North Carolina ("Impacted Groups") [D.E. 40] (collectively "Proposed Intervenors").

## NATURE OF THE CASE & RELEVANT FACTS

*The Instant Action.*

This action was commenced on May 27, 2025 with the filing of the complaint. [D.E. 1]. The complaint is a federal enforcement action brought by the Attorney General of the United States on behalf of the United States of America against the State of North Carolina and the State Board to ensure compliance with federal law. *Id.*, ¶¶ 22-24. Plaintiff alleges that Defendants have not maintained an accurate statewide voter registration list in violation of Section 303(a)(5) of Help America Vote Act of 2002 ("HAVA"). *Id.*, ¶¶ 5, 34-42. Specifically, the complaint alleges that there are a number of registered voters in the list that do not have a driver's license number or social security number contained within their registration records as required by HAVA, and that this will not be remedied absent relief from this Court. *Id.*, ¶¶ 19, 47, 48.

Plaintiff seeks declaratory and injunctive relief that would direct Defendants to comply with HAVA prospectively, and to develop a plan to correct these alleged violations by contacting and collecting the missing information from voters and updating the voter registration list to reflect same, verify same with the Court and Plaintiff, and update registration and training materials to reflect the requirements of Section 303(a)(5). *Id.*, pp. 16-17. Notably, none of the requested relief calls for the removal of registered voters from North Carolina's registration list. *Id.*

On June 3, 2025, Defendants agreed to waive service resulting in the response to the complaint being due on or before July 28, 2025. [D.E. 14-21].

On June 2, 2025, NC ARA filed a motion to intervene supported by a memorandum of law asserting intervention as of right, or alternatively, permissive intervention. [D.E. 7, 8]. NC

ARA asserts that it represents the interests of its members, older and retired Americans, on a variety of issues, including their voting rights. [D.E. 9, pp. 15-18].

On June 17, 2025, the DNC filed a motion to intervene supported by a memorandum of law, also asserting intervention as of right, or alternatively, permissive intervention. [D.E. 34, 35]. The DNC asserts that it represents the interests of itself as an organization, its members in North Carolina, and Democratic voters, including their voting rights. [D.E. 35, pp. 3-4].

Also on June 17, 2025, the Impacted Groups (individual voters, the NAACP North Carolina State Conference, and the League of Women Voters of North Carolina) filed a motion to intervene supported by a memorandum of law, also asserting intervention as of right, or alternatively, permissive intervention. [D.E. 39, 40]. The individual voters represent their own interests as voters potentially impacted because they were targeted in a recent election protest by a candidate for office for lacking a driver's license or social security number in their registration record. [D.E. 40, pp. 9-14 (citing Griffin Protests)]. The League of Women Voters of North Carolina represents the interests of the organization itself and the interests of its members, including protecting and expanding their voting rights. *Id.*, pp. 14-15. The NAACP North Carolina State Conference represents the interests of the organization itself and the interests of its members, including their voting rights. *Id.*, pp. 15-16.

<u>Related Cases.</u>

The instant action is related to other, currently-pending cases pursuant to Local Rule 40.3. It is not the only, or even the first, case brought as a challenge to North Carolina's voter registration database based upon an alleged violation of HAVA. In the last year, numerous cases have come before this Court raising challenges based upon the same allegations that certain

registered voters lack a driver's license or social security number in the registration database.[1]

Each of these cases was a related case and either originally assigned, or reassigned, to Richard E. Myers, II, Chief United States District Judge. *Id.* Among those cases, *Republican National Committee, et al. v. North Carolina State Board of Elections, et al.* (hereinafter cited as "*RNC*") remains pending before this Court. No. 5:24-cv-00547 (filed September 23, 2024). Moreover, *Kivett, et al. v. North Carolina State Board of Elections, et al.* (hereinafter cited as "*Kivett II*"), while technically closed on this Court's docket, remains pending before the Fourth Circuit on the State Board's appeal seeking to have the remand order reversed and for this Court to reassert jurisdiction. No. 5:25-cv-00003-M (filed January 2, 2025).

And it appears that all parties in the instant action are in agreement that this action is similarly related to the *RNC* case. In filing the complaint for this action, Plaintiff noted in its

---

[1] *United Sovereign Americans, Inc., et al. v. North Carolina State Board of Elections, et al.*, No. 5:24-cv-00500-M (filed August 24, 2024) (Assigned to Chief Judge Myers);

*Republican National Committee, et al. v. North Carolina State Board of Elections, et al.*, No. 5:24-cv-00547-M (filed September 23, 2024) (Assigned to Chief Judge Myers) (hereinafter cited as "*RNC*");

*North Carolina Democratic Party v. North Carolina State Board of Elections, et al.*, No. 5:24-cv-00699-M (filed December 6, 2024) (Reassigned to Chief Judge Myers);

*Griffin v. North Carolina State Board of Elections*, No. 5:24-cv-00724-M (filed December 19, 2024) (Assigned to Chief Judge Myers);

*Griffin v. North Carolina State Board of Elections*, No. 5:24-cv-00731-M (filed December 20, 2024) (Reassigned to Chief Judge Myers);

*Kivett, et al. v. North Carolina State Board of Elections, et al.*, No. 5:25-cv-00003-M (filed January 2, 2025) (Reassigned to Chief Judge Myers) (hereinafter cited as "*Kivett II*"); and

*Conley, et al. v. Hirsch, et al.*, No. 5:25-cv-00193-M (filed April 14, 2025) (Reassigned to Chief Judge Myers).

Civil Cover Sheet, Part VIII, that the *RNC* action before Chief Judge Myers is a related case. [D.E. 1-1, Part VIII]. The State Defendants agree that these are related cases under Local Rule 40.3 and should be treated as such by this Court.

Proposed Intervenors appear to agree as well. On June 9, 2025, in the *RNC* case, the DNC (Intervenor-Defendants in that case), filed a Notice of Related Case informing the Court that the instant action was filed on May 27, 2025, that the same Defendants are involved in both cases, that both cases will require the Court to interpret voter registration and list maintenance processes related to HAVA, that both cases implicate the rights of the same voters, and thus, the cases meet the definition of related cases under Local Civil Rule 40.3(a)(1) and (2) and litigating the same issues before different judges would likely be unduly burdensome, duplicative, and risk conflicting results. *See RNC* [D.E. 85].

On June 20, 2025, this Court issued a text-only order reassigning this case to Chief Judge Myers "for the continued efficient administration of justice." *See* June 20, 2025 Text-Only Reassignment Order.

**ARGUMENT**

I. **Proposed Intervenors Cannot Demonstrate a Right to Intervene.**

To intervene by right under Rule 24(a) of the Rules of Civil Procedure, an intervenor must (1) make a timely motion to intervene, (2) show an interest in the subject matter of the lawsuit, (3) show that its interest would be impaired by the lawsuit, and (4) show that its interest is not adequately represented by existing parties. *See* Fed. R. Civ. P. 24(a); *Stuart v. Huff*, 706 F.3d 345 at 349 (4th Cir. 2013) (citing *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991)).

State Defendants do not contest the first, second, or third requirement under Rule 24(a). The motions are timely and Proposed Intervenors have shown an interest in the subject matter of

the lawsuit. However, as outlined below, Proposed Intervenors fail to meet the third prong of the Rule 24(a) standard as Proposed Intervenors' stated interests will not be impaired absent intervention in this lawsuit.

### A. HAVA Contains No Private Right of Action.

As a threshold matter, intervention as of right in this action is inconsistent with this Court's prior ruling in the related casesthat HAVA provides no private right of action to a similar organization and its member-voters.

In the related *RNC* case, the State Board argued in its motion to dismiss that there is no private cause of action for claims based on the violations of HAVA. *See RNC* [D.E. 31, pp. 11-12]. This Court agreed, finding that HAVA was not intended to provide a private right of action based on the alleged violations of that statute to the RNC or the voters it represented. *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 754 F. Supp. 3d 664, 690 (E.D.N.C. 2024) ("These provisions of HAVA do not 'unmistakabl[y] focus' on Plaintiffs or the voters they represent; the provisions do not mention them at all. The court thus finds that these provisions do not 'create[] an individually enforceable right in the class of beneficiaries to which [Plaintiffs] belong.'" (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 691 (1979); and *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120, 125 S. Ct. 1453, 161 L. Ed. 2d 316 (2005)). The Court reasoned that because HAVA established an express provision by which the Attorney General may bring an enforcement action, and required States to establish and maintain a State-based administrative complaint procedure, which North Carolina has done, these expressly created remedies "strongly suggest that [Congress] intended not to impliedly create a private right of action under the provisions at issue here." *Id.*, at 691.

Although this was applied against a plaintiff seeking to bring an action directly under HAVA, not intervenors seeking to defend against potential impacts of the enforcement of HAVA, it serves to demonstrate why it would be more appropriate for Proposed Intervenors' to seek intervention and relief in the related cases, where private parties are already litigating these issues, not this enforcement action by the United States against the State of North Carolina. In the case of the DNC, it has already intervened and is a party in the *RNC* action. In the case of the NC NAACP, it sought intervention in the *RNC* action and was denied because its interests were already adequately represented. *See Republican Nat'l Comm. v. N.C. State Bd. of Elections*, No. 5:24-CV-00547-M, 2024 U.S. Dist. LEXIS 177896, at *7 (E.D.N.C. Sep. 30, 2024).

Thus, by treating this case as a related case to the *RNC* case, the Court has already ensured that there is a single pathway for all parties to participate in the related litigation, that their interests will be considered by the Court, and that these issues will be resolved with consistent rulings.

**B.     There is No Threat of Removal of Registered Voters.**

Each of the Proposed Intervenors appears to misunderstand the scope of the relief requested in the complaint.

NC ARA asserts that its interests are "a singular focus in protecting the registration statutes [sp.] of their members and constituents, who are lawfully eligible and registered to vote." [D.E. 8, p. 24; see also p. 23 ("If the federal government succeeds, many of the Alliance's members and constituents will be subject to any subsequent data collection scheme imposed by the Court or the State Board, with the attendant risk that their registrations will be cancelled, despite the fact that these voters did nothing wrong.")].

7

Likewise, DNC asserts that one of its interests would be impacted because it would have to divert resources "in order to ensure that those voters' registrations (and in turn, their votes) are not erroneously canceled." [D.E. 35, pp. 11-12]. And finally, the Impacted Groups assert that their interests include preventing Plaintiff's "goal of requiring the NCSBE to develop a plan that could remove approximately 200,000 voters from the voter rolls," which would adversely and illegally impact its members. [D.E. 40, pp. 15-16; *see also* p. 20, and p. 25 ("[B]oth Impacted Groups have direct interest in preventing the potential removal of their constituents from the rolls–a real risk in this lawsuit.")].

Thus, a primary interest put forward by each of the Proposed Intervenors to justify intervention is their belief that this lawsuit presents the risk of removal of registered voters from the registration list. But Plaintiff's complaint contains no request to remove any voter from the registration list. [D.E. 1, pp. 16-17]. Again, the complaint calls for State Defendants to develop a plan to contact and collect the allegedly missing information from voters in order to update the registration database. *Id*. It contains no demand that any registered voter be removed from North Carolina's registration list as part of that process. *Id*. Thus, because there is no risk of removal from the instant action, Proposed Intervenors' interest in preventing removals cannot be impaired by this action.

## II.     Permissive Intervention.

Permissive intervention under Rule 24(b)(1) of the Rules of Civil Procedure allows a court to grant intervention to anyone who (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P.

8

24(b)(3).

As addressed above, HAVA provides no private right of action to individuals or organizations seeking the enforcement of HAVA's statutory provisions. Thus, it is only the second means under subsection (B) that could apply here.

For the reasons stated above, Defendants do not believe the interests of the parties and the Court would be best served by permitting the Proposed Intervenors to intervene in this enforcement action. In the *RNC* case, the Court considered permissive intervention under the same circumstances and found that it would complicate discovery and consume the resources of the court and parties. *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, No. 5:24-CV-00547-M, 2024 U.S. Dist. LEXIS 177896, at *11-12 (E.D.N.C. Sep. 30, 2024). More importantly, however, the Court in *RNC* held that granting permissive intervention would "open the floodgates on this lawsuit to any voter in the state" potentially impacted and because that number could "run into the hundreds of thousands," the Court was not inclined to turn the "lawsuit into a public forum." *Id.* (quoting *League of Women Voters of Virginia v. Virginia State Bd. of Elections*, 458 F. Supp. 3d 460, 466 (W.D. Va. 2020). The same reasoning would apply here.

Thus, State Defendants respectfully suggest that rather than adding more parties to this action, the better course has already been achieved by designating this case as a related case to the *RNC* action. Again, all of the related cases are assigned to the same district judge, all parties are able to adequately present their interests to that same district judge, and any rulings will be consistent between the related cases, such that permissive intervention should be denied.

## CONCLUSION

For the reasons stated above, the Proposed Intervenors' motions to intervene should be denied.

Respectfully submitted this the 23rd day of June, 2025.

        NORTH CAROLINA
        DEPARTMENT OF JUSTICE

        /s/ Terence Steed
        Terence Steed
        Special Deputy Attorney General
        N.C. State Bar No. 52809
        Email: tsteed@ncdoj.gov

        /s/ Mary L. Lucasse
        Mary L. Lucasse
        Special Deputy Attorney General
        N.C. Bar No.: 39153
        Email: mlucasse@ncdoj.gov

        /s/ Ryan C. Grover
        Ryan C. Grover
        Special Deputy Attorney General
        N.C. Bar No.: 53703
        Email: rgrover@ncdoj.gov

        North Carolina Department of Justice
        Post Office Box 629
        Raleigh, North Carolina 27602
        Telephone: (919) 716-6567
        Facsimile: (919) 716-6763

        *Counsel for State Defendants*