# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>NORTH CAROLINA STATE BOARD OF ELECTIONS; SAM HAYES, in his official capacity as Executive Director of the North Carolina State Board of Elections; FRANCIS X. DE LUCA, JEFF CARMON, STACY EGGERS IV, SIOBHAN O'DUFFY MILLEN, and ROBERT RUCHO, in their official capacities as Members of the North Carolina State Board of Elections; and STATE OF NORTH CAROLINA,<br><br>    Defendants. | Case No. 5:25-cv-00283-M-RJ |

**REPLY BRIEF IN SUPPORT OF THE NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS' MOTION TO INTERVENE AS DEFENDANT**

**INTRODUCTION**

Last Monday, the Department of Justice ("DOJ") told this Court that the Alliance should not be granted intervention in this case because its lawsuit would not "implicate any individual rights," and the Alliance's interests were adequately represented by the existing state defendants, including the State Board of Elections. *See* ECF No. 55 ("DOJ. Br.") at 11, 12. The very next day, the State Board announced and approved a tentative deal with DOJ to resolve this case that will force as many as 98,000 registered voters to vote provisionally, imperiling their most "fundamental political right." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886); *see* Notice, ECF No. 58 (describing tentative agreement between the parties). Remarkably, this plan parallels a remedy that the Board said would violate federal law just a year ago. *See* State Bd. Defs.' Reply in Supp. of Mot. to Dismiss ("State *RNC* Br.") at 9–10, *Republican Nat'l Comm. v. N.C. State Bd. of Elections* ("*RNC*"), No. 5:24-CV-547-M (E.D.N.C. Oct. 11, 2024), ECF No. 53. Having apparently abandoned that view, the State Board plainly does not intend to defend this suit. Instead, the existing parties are in open agreement to relegate up to nearly a hundred thousand North Carolinians to second-class voter status—despite no clear evidence these voters did anything wrong.

The Board's recent settlement concessions remove any possible doubt that the Alliance has a right to intervene in this case. The Alliance and its members plainly have a "significant interest" at risk of impairment, namely the consignment of thousands of voters, including Alliance members, to provisional voting status with the attendant risk of disenfranchisement. *See* Fed. R. Civ. P. 24(a)(2). And the existing parties, now singing from the same hymnal sheet, plainly do not adequately represent those interests. *Id.* Contrary to DOJ's claims, the Alliance does not seek to intervene over minor differences in litigation "tactics" with the Board. DOJ Br. at 13. It seeks to

1

ensure this case is litigated *at all*. What DOJ insisted were "unrealized concerns" about the State Board's "approach[] to the conduct of the litigation," *id.*, are now indisputably realized, and the lack of adequate representation of the Alliance's interests could not be clearer. Given the Board's rapid capitulation to the plaintiff's demands, and the imminent risk to the Alliance, its members, and thousands of other North Carolinians from any agreement the Board may enter into with DOJ, it is imperative that the *voters* at risk have a voice in this litigation. The Alliance's motion to intervene should be granted.

## ARGUMENT

### I. The Alliance is entitled to intervene as of right.

The State Board's capitulation to DOJ confirms that the Alliance satisfies the requirements for intervention as of right. Ignoring that elephant in the room, both DOJ and the State Board put forth a puzzling argument that the Alliance cannot intervene because it lacks a cause of action under HAVA. *See* DOJ Br. at 4; ECF No. 56 ("State Br.") at 6–7. That argument is wrong and beside the point, not least of all because the Alliance seeks to intervene as a *defendant*, not a plaintiff. Moreover, nothing in HAVA overrides the ordinary application of Rule 24, which permits "*anyone to intervene*" in litigation that impacts its interests. Fed. R. Civ. P. 24(a)(2) (emphasis added). Indeed, this case exemplifies why such flexible intervention rules are necessary, lest existing parties be permitted to bargain away the fundamental rights of the public and other interested organizations.

### A. DOJ's suit jeopardizes the interests of the Alliance and its members, as the Board's settlement plan confirms.

The Alliance's opening memorandum sets forth the clear risks that DOJ's suit poses to the Alliance's own organizational interests and the voting rights of its members. *See* Alliance Mem. at 14–18, ECF No. 8. In response, both DOJ and the State Board assured the Court that this case

2

was merely about dusty "administration requirements" under HAVA. DOJ Br. at 8, 10; *see also* State Br. at 8 (characterizing "Plaintiff's complaint" as calling for a mere "collect[ion]" of missing information and to "update the registration database"). Because this case concerns only "[a]dding an identification number" to state records, they insisted, it could not possibly "implicate any individual rights" or "impair the right to vote." DOJ Br. at 10.

Those assurances, made last Monday, June 23, were short-lived. The very next day, the State Board made clear that "individual rights," *id.*, are at risk in this case after all. At its June 24 meeting, the State Board's Executive Director publicly confirmed he had been in "discussions" with the federal government regarding a resolution to this action, which the federal government "tentatively signed off on."[1] *See generally* ECF No. 58-1 (State Board Plan). The plan would require the Board to mail notices to approximately 98,000 voters whose records "apparently" do not include "HAVA info and have not otherwise complied with HAVA." *Id.* at 4. The Board says nothing about how it will determine which voters to target and whether the method for doing so is accurate and reliable. Even so, for those who are sent notices and do not respond, the Board will "creat[e] a flag to appear on these voters' records" to "alert[] poll workers that they **must vote [a] provisional ballot** and provide missing information for [the] ballot to count." *Id.* at 8 (emphasis added). The voter must also pass a "verification process" to match their identification numbers with government databases before their vote can count.[2] In other words, the tentative plan agreed to by the State Board and DOJ would require many long-time registrants who previously voted without issue and have not been shown to be ineligible to now vote provisionally, and—even if

---

[1] Meeting of N.C. State Bd. of Elections at 0:17:10–0:17:28 (June 24, 2025), https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2025-06-24/State%20Board%20of%20Elections%20Meeting-20250624.mp4 ("NCSBE Meeting Video").
[2] NCSBE Meeting Video at 0:25:29–0:25:50.

3

they provide their allegedly missing identification information to officials—their ballots might still not be counted.

The State Board's plan to relegate tens of thousands of voters to second-class voting status—including the Alliance's members—is textbook impairment of a significant interest under Rule 24. As this Court previously recognized, it threatens the "fundamental interest" of long-time registered voters because those voters "may be . . . required to cast provisional ballots" even though no one has suggested they are ineligible. Order, *RNC*, 2024 WL 4349904, at *3 (E.D.N.C. Sept. 30, 2024) (finding organization had a "significantly protectable interest" where voters could be required to cast provisional ballots (quotation omitted)). Indeed, the State Board recognized as much last fall when it explained that another plaintiff's request to "purge or relegate to provisional voting anyone who did not [allegedly] provide" driver's license or social security information ran contrary to HAVA and the Voting Rights Act. State *RNC* Br. at 5, 9–10. In other words, the plan that the parties have now tentatively agreed to unequivocally "implicate[s] [] individual rights." DOJ Br. at 11. And the impairment of those rights is not "speculative," *id.* at 9, as the Board already voted to implement DOJ's remedial plan in full at its June 24 meeting.[3]

Worse still, even if individuals targeted by the State Board's plan provide the requested information, they are not immune from disenfranchisement—their information must still match a government database or their provisional ballots will be rejected. And the Board's plan outlines no clear cure process for individuals who provide accurate information that does not result in a match. That is no idle concern: as the State Board itself pointed out in the *Griffin* litigation, roughly half of the 60,000 voters challenged in that case lacked social security and driver's license information in their voter files *due to matching errors*. *See* ECF No. 7-3 at 53–54. These errors

---

[3] NCSBE Meeting Video at 0:36:57–0:37:05.

frequently occur because "the applicant's first and last name, date of birth, and the driver's license or last four digits of [] social security number[s] <u>must all match exactly</u>" with DMV or Social Security databases. *Id.* (emphasis in original). Accordingly, the State Board's plan further imperils the interests of the Alliance and its members because it stands to disenfranchise voters even when they *do* supply additional information. *See Democratic Exec. Comm. of Fla. v. Detzner*, 347 F. Supp. 3d 1017, 1030 (N.D. Fla. 2018) (holding lack of cure process for provisional voters burdened right to vote and violated procedural due process).

These are not merely "generalized" interests asserted on behalf of "all North Carolinians." DOJ Br. at 11–12 (citation omitted). Neither DOJ nor the State Board disputes that the Alliance's members have had their ballots *specifically* challenged for allegedly failing to provide required information under HAVA. ECF No. 7-2 ¶ 12 ("Dworkin Decl."). Nor do they contest that many Alliance members registered to vote before HAVA, yet those members now face the risk of being swept up in the Board's provisional ballot scheme. Dworkin Decl. ¶ 8. Further still, DOJ and the State Board cannot—and do not—dispute the inevitable impact the plan will have on the Alliance itself, requiring the organization to undertake "far-ranging" and resource-consuming actions to help its members preserve their ability to vote. *See id.*; *see also Voto Latino v. Hirsch*, 712 F. Supp. 3d 637, 658 (M.D.N.C. 2024) (finding standing where government action would "hinder [organization's] mission of registering eligible voters and engaging in voter advocacy"). The Alliance has therefore put forward a host of concrete interests that are at stake in this case.

DOJ's reliance on *League of Women Voters of Virginia v. Virginia State Board of Elections* is misplaced. *See* 458 F. Supp. 3d 460 (W.D. Va. 2020). The court there denied intervention to voters who claimed that "voter fraud" would dilute their voting power. *Id.* at 464. Such speculative fears of vote dilution are classic generalized grievances. *See Md. Election Integrity, LLC v. Md.*

5

*State Bd. of Elections*, 127 F.4th 534, 540 (4th Cir. 2025). In contrast, the Alliance's interests here are neither speculative nor generalized: they are firmly rooted in (1) the voting rights of *its own* members targeted by the Board's data-collection and provisional ballot scheme, and (2) the ensuing strain on its organizational resources. Dworkin Decl. ¶¶ 7–15. Accordingly, the Alliance has shown that it "stand[s] to gain or lose" from the outcome of this case. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991).

> **B. The Board's intention to settle on DOJ's terms shows it does not represent the Alliance's interests.**

To start, *the State Board itself* does not suggest that it adequately represents the Alliance's interests in this case. *See generally* State Br. at 5–6. And for good reason: the Alliance and State Board have diametrically opposed objectives here—the Board wishes to settle on DOJ's terms; the Alliance wishes to defend the lawsuit and the voting rights of its members. And while DOJ contends that the Alliance will be adequately represented by the State Board in this case because they "share the same objective[s]," *see* DOJ Br. at 12–13 (citation omitted), that argument is a nonstarter. Because the existing parties seek to settle this case on terms the Alliance opposes, any suggestion of adequate representation necessarily fails. *See* Alliance Mem. at 20–21 (collecting authority that existing party's desire to settle undercuts claim of adequate representation); *see also Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013) (explaining that, where an existing party and intervenor have "divergent objectives," claim of adequate representation is undermined).[4]

The recent change of control at the Board confirms the lack of adequate representation here. *Contra RNC*, 2024 WL 4349904, at *3 (finding organization was adequately represented by

---

[4] At most, the State Board suggests that the interests of "all parties" will be represented in the *RNC* case. State Br. at 7. That argument has no force as to the Alliance, which is not a party to any other pending action and has not sought intervention in any of them.

6

the Board where they shared the "same ultimate objective"). Following that change, the Board has made a complete about-face in its HAVA-related litigation. For example, just last fall in *RNC*, the Board (correctly) asserted that HAVA did *not* require voters who did not provide driver's license or social security numbers to be "relegate[d] to provisional voting." State *RNC* Br. at 1. It repeated that view in the Fourth Circuit, "maintain[ing] that HAVA does not require . . . demanding provisional ballots from these eligible voters." Defs.'-Appellants' Opening Br. at 33–34, *RNC v. N.C. State Bd. of Elections*, No. 24-2044 (4th Cir. Oct. 25, 2024). Now, the Board has reversed its position, claiming that forcing voters to cast provisional ballots is consistent with HAVA and necessary to "comport with federal law."[5] Similarly, the Board previously argued that "requiring provisional ballots from *eligible* voters" "violates Section 11(a) of the Voting Rights Act." State *RNC* Br. at 10. Now, the Board has nothing to say about the Voting Rights Act. The requirements of HAVA and the Voting Rights Act have not suddenly changed. The Board has.

    **C.    HAVA does not limit who may intervene as defendants under the Federal Rules of Civil Procedure.**

In a confused gambit to foreclose intervention, both the State Board and DOJ argue that private parties are categorically barred from intervening in suits brought under HAVA. But the existing parties point to nothing in HAVA that overrides the default application of Rule 24(a), which permits "*anyone to intervene*" if they satisfy its requirements. Fed. R. Civ. P. 24(a) (emphasis added); *accord Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972). Likewise, nothing in Rule 24 requires a party seeking to intervene as a *defendant* to possess a cause of action; that is simply not how federal civil litigation works.

    Start with the latter contention. The existing parties insist the Alliance "has no interest" in

---

[5] NCSBE Meeting Video at 0:16:55–0:17:06.

this suit because "HAVA confers no private right of action." DOJ Br. at 4; *see* State Br. at 6–7. That misstates the law. Under Rule 24's "plain text," parties "need only an 'interest' in the litigation—not a 'cause of action'" or statutory "permission" to intervene. *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). Accordingly, "under Rule 24(a)(2), the question is not whether the applicable law assigns the prospective intervenor a cause of action." *Id.* (citation omitted). The Supreme Court made that clear in *Trbovich*, where it held that a union member could intervene alongside the Secretary of Labor as a *complainant* under Rule 24(a), even where the underlying statute granted the Secretary "exclusive" enforcement rights. *See Trbovich*, 404 U.S. at 536–37. This argument is even more flawed here because the Alliance seeks to intervene **as a defendant**. It should go without saying that a private cause of action exists "*for the benefit of the plaintiff.*" *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1106 (4th Cir. 1989) (emphasis added) (citation omitted). That distinguishes *United States v. Alabama* (cited at DOJ Br. at 6–7), which discussed HAVA's right of action only to address the "possibility" that those proposed intervenors were seeking intervention as *plaintiffs*. *See* No. 2:06-cv-392-WKW, 2006 WL 2290726, at *4 n.6 (M.D. Ala. Aug. 8, 2006)).[6]

DOJ is similarly wrong that the Alliance is precluded from intervening because HAVA "authorizes" only government entities "to be defendants." DOJ Br. at 6. It may well be that the only parties from whom DOJ can *obtain relief* under HAVA are state and local government actors. *E.g.*, 52 U.S.C.A. § 21111. But it is common for parties to intervene as defendants to protect their

---

[6] DOJ's reliance (at 7) on *United States v. New York State Board of Elections* is also misplaced. *See* 312 Fed. App'x 353 (2d Cir. 2008). That unpublished summary order addressed Rule 24(a)'s adequacy prong, not protectable interests, and says nothing about rights of action under HAVA. Further still, it affirmed denial of intervention specifically because the putative intervenor's allegations of inadequate representation found "no support in the record." *Id.* at 355. But the record in this case is replete with evidence of inadequate representation. *Supra* 6–7.

8

Case 5:25-cv-00283-M-RJ    Document 60    Filed 07/02/25    Page 9 of 13

interests, even where the plaintiff seeks no relief from them.

The Ninth Circuit squarely rebuked the DOJ's proposed "categorical prohibition" on private party intervention in a similar context concerning a law that "binds only the [] government." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1176–77 (9th Cir. 2011) (citing the National Environmental Policy Act). "Such a bright-line rule" barring intervention in suits brought against governmental defendants is "inconsistent with the text of Rule 24(a)(2)" and its "liberal policy in favor of intervention." *Id.* at 1178 (quoting Fed. R. Civ. P. 24(a)(2)) (citation omitted). Nothing in Rule 24(a) "engrafts a limitation on intervention of right to parties liable to the plaintiffs on the same grounds as the defendants." *Id.* at 1178–79. And HAVA itself does nothing to displace the default liberal intervention standards under Rule 24, which—like every other federal rule—"ha[s] the same force and effect as federal statutory law." *United States v. Keller*, 142 F.3d 718, 727 (4th Cir. 1998) (quoting *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 21 (1st Cir. 1991)).

Generously construed, the existing parties may be suggesting that, because only governmental entities can sue and be sued under HAVA, the disposition of this case cannot affect individual voters and civic organizations. But the deal struck by the State Board and DOJ quickly dispels such an argument. By agreeing to relegate thousands of voters to provisional status, the existing parties have acutely threatened to impair the Alliance's significant protectable interests. That is all Rule 24 requires. By narrowly focusing solely on who HAVA regulates and permits to sue, the State Board and DOJ are looking through "the wrong analytical lens." *Jones*, 348 F.3d at 1017–18. The question is not whether HAVA gives the Alliance "permission" to intervene. *Id.* It is whether the Alliance "stand[s] to gain or lose by the direct legal operation of the district court's judgment," *Teague*, 931 F.2d at 260–61, and whether the suit "may as a practical matter impair or impede" the intervenor's ability to protect its interests, Fed. R. Civ. P. 24(a)(2). The Alliance has

9

clearly established the risk of such impediment and loss here.[7]

## II. The Alliance should alternatively be granted intervention under Rule 24(b).

The State Board and DOJ say nothing meaningful in opposition to permissive intervention. The State Board claims that "all parties are able to adequately present their interests" in "the *RNC* action." State Br. at 9. As explained, the Alliance is not a party to that action. Both the Board and DOJ also parrot their flawed theory that "HAVA provides no private right of action" and thus bars intervention. *Id.*; *see also* DOJ Br. at 15. But that has as much bearing on permissive intervention as it does on intervention as of right—none at all. *See Jones*, 348 F.3d at 1018. Nor could the Alliance's intervention result in "duplicative briefing," DOJ Br. at 15, given the Board's disinterest in contesting DOJ's claims and the glaring need for a voter-focused voice in this case.

Permitting the Alliance's intervention here will also not "open the floodgates." *Id.*; State Br. at 19. It will simply ensure that a party will deliver the "thoughtful and comprehensive arguments" the Court is owed in "aid[]" of its "decisional process." *Griffin v. N.C. State Bd. of Elections*, No. 5:24-CV-731, 2025 WL 1292530, at *7, *35 (E.D.N.C. May 5, 2025) (granting summary judgment for the Alliance).

## CONCLUSION

For the reasons stated above, the Alliance respectfully requests that the Court grant its motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit it to intervene under Rule 24(b).

---

[7] Even if a right of action were required to intervene (and it is not), HAVA creates a federal right enforceable against state officials under 42 U.S.C. § 1983. HAVA's directive that individuals "shall be permitted to cast a provisional ballot" is "unambiguous[ly]" "rights-creating." *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004) (quoting 52 U.S.C. § 21082(a)(2)). Likewise, HAVA provides that provisional ballots cast by eligible voters "shall be counted." 52 U.S.C. § 21082(a)(4).

Dated: July 2, 2025

Respectfully submitted,

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri*
Christopher D. Dodge*
Tina Meng Morrison*
James J. Pinchak*
ELIAS LAW GROUP LLP
250 Massachusetts Ave, N.W., Suite 400
Washington, D.C. 20001
Telephone: (202) 968-4490
lmadduri@elias.law
cdodge@elias.law
tmengmorrison@elias.law
jpinchak@elias.law

Narendra K. Ghosh
N.C. Bar No. 37649
PATTERSON HARKAVY LLP
100 Europa Drive, Suite 420
Chapel Hill, NC 27217
Telephone: (919) 942-5200
nghosh@pathlaw.com

*Participating via Notice of Special Appearance*

*Counsel for Proposed Intervenor the North Carolina Alliance for Retired Americans*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served via ECF to all counsel of record.

Dated: July 2, 2025.

>*/s/ Lalitha D. Madduri*
>Lalitha D. Madduri
>
>*Counsel for Proposed Intervenor the North Carolina Alliance for Retired Americans*