UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| **United States of America,** <br><br> Plaintiff, <br><br> v. <br><br> **North Carolina State Board of Elections; Sam Hayes**, in his official capacity as Executive Director of the North Carolina State Board of Elections**; Francis X. De Luca, Jeff Carmon, Stacy Eggers IV, Siobhan O'Duffy Millen**, and **Robert Rucho**, in their official capacities as members of the North Carolina State Board of Elections; and **State of North Carolina,** <br><br> Defendants. | No. 5:25-cv-00283-M-RJ |

CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY GABRIELA ADLER-ESPINO, RANI DASI, MARY KAY HELING, AUDREY MEIGS, LARRY REPANES, AMY GRACE BRYANT, RALIM ALLSTON, KEMEKA SIDBURY, THE NAACP NORTH CAROLINA STATE CONFERENCE, AND THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA

# TABLE OF AUTHORITIES

**Cases**

*Griffin v. N.C. State Bd. of Elections*, 913 S.E.2d 894 (N.C. 2024) .............................. 7

*Griffin v. N.C. State Bd. of Elections*, 915 S.E.2d 212 (N.C. App. 2024) ...................... 7

*Majority Forward v. Ben Hill Cnty. Bd. of Elections*, 509 F. Supp. 3d 1348 (M.D. Ga. 2020) ................................................................................................................................ 4

*N.C. State Conference of the NAACP v. Bipartisan State Bd. of Elections & Ethics Enf't*, No. 1:16-cv-1274, 2018 WL 3748172 (M.D.N.C. Aug. 7, 2018) ....................... 4

*U.S. Student Ass'n Found. v. Land,* 546 F.3d 373 (6th Cir. 2008) .............................. 4

**Statutes and Rules**

52 U.S.C. § 21083 ..................................................................................................... 3, 7

Fed. R. Civ. P. 24(a) ...................................................................................................... 2

N.C. Gen. Stat. § 163-166.16(c) ................................................................................... 5

N.C. Gen. Stat. § 163-182.2(a)(4) ................................................................................. 6

N.C. Gen. Stat. § 163-82.4(f) ....................................................................................... 7

**Other Authorities**

Christina A. Cassidy & Gary Robertson, *North Carolina To Send Mailers To About 200,000 Voters Asking For Missing Registration Info*, ABC News (June 25, 2025, 2:46 PM), https://abcnews.go.com/Politics/wireStory/north-carolina-send-mailers-200000-voters-missing-registration-123167145 [https://perma.cc/J8EL-2VKD] 2, 8

N.C. STATE BD. OF ELECTIONS, PLAN TO COMPLETE INCOMPLETE REGISTRATION INFORMATION FROM CERTAIN VOTERS (June 24, 2025), https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2025-06-24/Hayes_Plan%20to%20Collect%20Incomplete%20Registration%20Information_Web_06242025.potx.pdf [https://perma.cc/4HCY-9S6U] ............................... 1, 3, 5, 7

*State Board Unanimously Approves Plan to Collect Missing Identification Numbers from Certain Voters*, N.C. STATE BD. OF ELECTIONS (June 24, 2025), https://www.ncsbe.gov/news/press-releases/2025/06/24/state-board-unanimously-

approves-plan-collect-missing-identification-numbers-certain-voters [https://perma.cc/USV5-QDHX] ................................................................................. 1

## INTRODUCTION

Proposed Intervenors Gabriela Adler-Espino, Rani Dasi, Mary Kay Heling, Audrey Meigs, Larry Repanes, Amy Grace Bryant, Ralim Allston, Kemeka Sidbury, ("the Impacted Voters"), NAACP North Carolina State Conference, and the League of Women Voters of North Carolina ("the Impacted Groups," and, collectively with the Impacted Voters, "Proposed Intervenors") file this reply brief to address a change in circumstances that directly impacts their stakes in this litigation: On Tuesday, June 24, Defendant North Carolina State Board of Elections ("NCSBE") voted unanimously to begin a data collection process for nearly 200,000 voters whose registrations allegedly lack a driver's license number or the last four digits of their social security number ("SSN-4").[1] Fewer than 24 hours after filing an opposition to Proposed Intervenors' Motion to Intervene asserting no voters would be affected, the NCSBE approved a plan that will force some voters to vote a provisional ballot that may not count and burden other voters by seeking identification information they have already provided.

---

[1] *State Board Unanimously Approves Plan to Collect Missing Identification Numbers from Certain Voters*, N.C. State Bd. of Elections (June 24, 2025), https://www.ncsbe.gov/news/press-releases/2025/06/24/state-board-unanimously-approves-plan-collect-missing-identification-numbers-certain-voters [https://perma.cc/USV5-QDHX]; N.C. STATE BD. OF ELECTIONS, *Plan to Complete Incomplete Registration Information from Certain Voters* 4 (June 24, 2025), https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/2025-06-24/Hayes_Plan%20to%20Collect%20Incomplete%20Registration%20Information_Web_06242025.potx.pdf [https://perma.cc/4HCY-9S6U] ("NCSBE Plan").

Indeed, the Executive Director of the NCSBE announced that the Department of Justice had "tentatively signed off" on the plan and that its purpose was to "satisfy the outstanding litigation" around the voter records.[2] Proposed Intervenors filed their motion to intervene to prevent precisely the harms that this plan will cause, including, for some voters, disenfranchisement.

The adoption of this new plan makes it even clearer that Proposed Intervenors should have a chance to participate in this case to protect their interests, which will otherwise go unconsidered.

## ARGUMENT

Proposed Intervenors seek to protect themselves and their constituents from disenfranchisement or extreme barriers in casting a ballot due to this litigation. For the reasons described below, the NCSBE Plan is further evidence that the existing parties to this case do not "adequately represent" the interests of Proposed Intervenors. *See* Fed. R. Civ. P. 24(a)(2).

The NCSBE Plan has three steps. First, the NCSBE will send "Mailing 1" to approximately 98,000 voters "whose records apparently lack [Help America Vote Act ("HAVA")] info [a driver's license number or SSN-4] and have not otherwise complied with HAVA." Those voters must "vote provisionally until they provide the

---

[2] Christina A. Cassidy & Gary Robertson, *North Carolina To Send Mailers To About 200,000 Voters Asking For Missing Registration Info*, ABC News (June 25, 2025, 2:46 PM), https://abcnews.go.com/Politics/wireStory/north-carolina-send-mailers-200000-voters-missing-registration-123167145 [https://perma.cc/J8EL-2VKD].

information."[3] Second, the NCSBE will send "Mailing 2" to approximately 96,000 voters who "*have complied* with HAVA" but do not have a driver's license number or SSN-4 on file, including voters whose numbers "did not validate, but showed alternative HAVA ID when voting."[4] Third, "Mailing 3" will "repeat Mailing 1" for voters who have not provided satisfactory information.[5]

Notably, HAVA's identification requirements are not limited to driver's licenses or SSN-4s. The law requires states to request these numbers—or a statement that a registrant lacks these numbers—in an application to register to vote. But HAVA also requires most voters who register by mail to validate their identity the first time they vote and permits a myriad of other documents, including other valid photo identification, utility bills, bank statements, and paychecks, to satisfy this requirement. *See* 52 U.S.C. § 21083(b). The NCSBE did not clarify whether "complied with HAVA" means that the voter gave a driver's license number or SSN-4 or whether the provision of any HAVA-accepted document suffices. If the NCSBE means the latter, it raises the question of how it could know whether a voter showed, for example, a utility bill and thus complied with HAVA or was able to vote without showing any acceptable document. As the NCSBE did not provide enough information for the Impacted Voters to determine with certainty in which

---

[3] NCSBE Plan, at 4,7.

[4] *Id.* at 4 (emphasis in original).

[5] *Id.* at 5.

category they fall, the below analysis of which mailing applies to which voter is based on each voter's understanding of their present situation.

First, the plan will force some eligible voters to vote provisionally, so their ballots may not count. Courts have recognized that provisional ballots as a failsafe do not satisfy the right of eligible citizens to vote. *See, e.g.*, *N.C. State Conf. of the NAACP v. Bipartisan State Bd. of Elections & Ethics Enf't*, No. 1:16-cv-1274, 2018 WL 3748172, at *8 n.11 (M.D.N.C. Aug. 7, 2018) ("This Court's conclusion is not disturbed by the fact that a voter whose registration was improperly canceled may have been allowed to cast a provisional ballot."); *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 388 (6th Cir. 2008) ("Given that not all provisional ballots will necessarily be counted, the availability of provisional ballots may not protect those wrongly purged."); *Majority Forward v. Ben Hill Cnty. Bd. of Elections*, 509 F. Supp. 3d 1348, 1355–56 (M.D. Ga. 2020) (enjoining removal program that would require targeted voters to cast provisional ballots).

For example, Gabriela Adler-Espino would likely have to provide additional documentation and would face the possibility of her ballot not counting. A candidate in last year's elections challenged her ballot in litigation for lacking an SSN-4 and driver's license number in her voter file, even though she registered to vote at the DMV in June 2024 and presented a social security number during the transaction. DE 39-5, Adler-Espino Decl., ¶¶ 7–8, 16. As an overseas voter, Ms. Adler-Espino was not required to provide a copy of her HAVA ID when voting. 52 U.S.C. § 21083(b)(3)(C)(i). Through no fault of her own, Ms. Adler-Espino and similarly

situated voters now must vote provisionally unless they receive and complete Mailing 1—and that assumes, unlike a year ago, that the information will be accurately recorded and saved to her voter registration record this time. Other Impacted Voters may also fall into this category, including Ralim Allston. When he voted last year, he provided a "state issued identification card obtained from the NC DMV," DE 39-11, Allston Decl., ¶ 7. While that is a HAVA-compliant document, 52 U.S.C. § 21083(b)(2), it is not a driver's license or document with his SSN-4, so it is unclear whether the NCSBE would consider Mr. Allston to have "complied with HAVA."[6] If that is the case, since his record "apparently lack[s] HAVA info,"[7] he may be in Mailing 1.[8]

Additionally, the NCSBE Plan does not specify whether voters who vote provisionally because of Mailing 1 will have to take additional steps to have their ballots count. For example, North Carolina voters who cast a provisional ballot because they do not present the required photo ID must bring an acceptable form of photo ID to their county board by noon on the third business day after the election for the provisional ballot to count. N.C. Gen. Stat. § 163-166.16(c). County boards of election have three business days to determine whether all provisional ballots

---

[6] NCSBE Plan at 4.

[7] *See id.*

[8] Mr. Allston has been voting in North Carolina since 2008, when he registered to vote and, to the best of his recollection, provided his driver's license number. *See* Allston Decl. ¶¶ 5, 7. So it is also possible he presented his driver's license number while voting prior to 2024.

should count. N.C. Gen. Stat. § 163-182.2(a)(4). The NCSBE Plan does not state whether the burden will be on the voter to provide more documentation to "cure" a provisional ballot they should not have had to cast or if the burden will be on the county to determine whether the vote should count. In either case, it appears county boards of elections will attempt to verify information provided by these voters using the same data matching systems that led the voters to appear incorrectly on these lists in the first place. *See, e.g.*, DE 39-3, Dasi Decl. ¶¶ 6-7, 12-13; DE 39-7, Heling Decl. ¶¶ 9-10.[9] Even at the highest level of generality, the NCSBE Plan plainly affects the rights of Proposed Intervenors.

Second, Mailing 2 needlessly burdens the Impacted Voters who provided driver's license numbers or SSN-4s but whose numbers have not validated. Each Impacted Voter provided the information asked of them when registering and at least six showed HAVA-compliant identifications when voting. Dasi Decl. ¶ 9; DE 39-4, Meigs Decl. ¶ 7; DE 39-6, Repanes Decl. ¶ 6; Heling Decl. ¶ 6; DE 39-10, Bryant Decl. ¶ 11; Allston Decl. ¶ 7[10]. In Mailing 2, the NCSBE asks for information that for many voters it already possesses to fix a mistake of its own making. And it

---

[9] That county boards are responsible for handling provisional ballots also raises uniformity concerns that particularly affect the Impacted Groups. County boards may count provisional ballots cast under this plan differently and whether a given voter's ballot counts may depend on their location.

[10] As discussed above, it is unclear whether Mr. Allston will be in Mailing 1 because he did not give a driver's license number or SSN-4 when voting last year or whether he will be in Mailing 2 because he showed a HAVA-compliant ID.

- 6 -
Case 5:25-cv-00283-M-RJ    Document 61    Filed 07/03/25    Page 9 of 15

should count. N.C. Gen. Stat. § 163-182.2(a)(4). The NCSBE Plan does not state whether the burden will be on the voter to provide more documentation to "cure" a provisional ballot they should not have had to cast or if the burden will be on the county to determine whether the vote should count. In either case, it appears county boards of elections will attempt to verify information provided by these voters using the same data matching systems that led the voters to appear incorrectly on these lists in the first place. *See, e.g.*, DE 39-3, Dasi Decl. ¶¶ 6-7, 12-13; DE 39-7, Heling Decl. ¶¶ 9-10.[9] Even at the highest level of generality, the NCSBE Plan plainly affects the rights of Proposed Intervenors.

Second, Mailing 2 needlessly burdens the Impacted Voters who provided driver's license numbers or SSN-4s but whose numbers have not validated. Each Impacted Voter provided the information asked of them when registering and at least six showed HAVA-compliant identifications when voting. Dasi Decl. ¶ 9; DE 39-4, Meigs Decl. ¶ 7; DE 39-6, Repanes Decl. ¶ 6; Heling Decl. ¶ 6; DE 39-10, Bryant Decl. ¶ 11; Allston Decl. ¶ 7[10]. In Mailing 2, the NCSBE asks for information that for many voters it already possesses to fix a mistake of its own making. And it

---

[9] That county boards are responsible for handling provisional ballots also raises uniformity concerns that particularly affect the Impacted Groups. County boards may count provisional ballots cast under this plan differently and whether a given voter's ballot counts may depend on their location.

[10] As discussed above, it is unclear whether Mr. Allston will be in Mailing 1 because he did not give a driver's license number or SSN-4 when voting last year or whether he will be in Mailing 2 because he showed a HAVA-compliant ID.

says nothing about why this time it will ensure the voters' records are complete and accurate when it has failed to accomplish that previously.[11]

Third, the NCSBE Plan would mean that in future elections, any voter whose registration record lacks their driver's license number or SSN-4 could be forced to vote provisionally, even those voters who provided that information at registration (including the Impacted Voters).[12] While it is productive that the NCSBE is updating its registration records, the NCSBE plan creates penalties for voters with incomplete records when the NCSBE is at fault for those incomplete records. The likelihood of this harm is particularly acute for the Impacted Groups, who almost certainly have members who will encounter this hurdle in future elections.

Moreover, HAVA does not require that a voter have a driver's license number or SSN-4. For voters who lack those numbers, the law directs states to assign those voters a unique identification number for verification purposes. 52 U.S.C. § 21083(a)(5)(A)(ii). The plan never addresses what will happen to these voters or how the NCSBE will ensure their continued ability to vote.

---

[11] One of the proffered justifications for the NCSBE Plan is that a recent North Carolina Court of Appeals ruling requires the state to contact voters for outstanding driver's license numbers or SSN-4s. But neither that ruling nor the underlying statute mandate this type of mailing process. *Griffin v. N.C. State Bd. of Elections*, 915 S.E.2d 212, 225 (N.C. App. 2024); N.C. Gen. Stat. § 163-82.4(f). And the relevant part of the decision was reversed by the North Carolina Supreme Court because "the responsibility for the technical defects in the voters' registrations rest[ed] with the [NCSBE] and not the voters." *Griffin v. N.C. State Bd. of Elections*, 913 S.E.2d 894, 895-96 (N.C. 2024).

[12] NCSBE Plan at 7.

Fourth, by all public accounts the NCSBE intends to rely on the same verification system it has used previously to verify information that voters provide in response to the NCSBE plan. This presents a major concern: It is the flaws in that verification system that led to incomplete records. In other words, the NCSBE created a recordkeeping problem, now asks voters to fill in the gaps, and never explains why this time it will ensure no further holes emerge.

Finally, the NCSBE developing this plan without any opportunity for public input effectively circumvents Proposed Intervenors' attempts to defend their rights in this case. The plan ostensibly provides much of the relief requested by the United States just weeks after it filed this lawsuit and before the Court has had an opportunity to rule on the motions to intervene. *See* DE 1, Compl., at 17 ¶ D. At the June 24, 2025, meeting, NCSBE director Sam Hayes said Plaintiff United States has "tentatively signed off on" the plan.[13] Yet there was no opportunity for public comment at the meeting, let alone for voters such as Proposed Intervenors to advocate for a solution that protects their interests. This short-circuited process undermines the United States's and the NCSBE's claims that Proposed Intervenors have no interest in this case and that Proposed Intervenors risk no injury from this lawsuit. *See* DE 56, at 7–8 (NCSBE response); DE 55, at 8–9 (United States response); DE 57, at 2 (United States incorporating response to Proposed Intervenors).

---

[13] Cassidy & Robertson, *supra* note 2.

## CONCLUSION

Proposed Intervenors respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a), or, alternatively, permit them to intervene under Rule 24(b).

Respectfully submitted this 3rd day of July, 2025.

/s/ *Jeffrey Loperfido*
Jeffrey Loperfido

| | |
|---|---|
| Caitlin A. Swain (No. 57042)<br>Kathleen Roblez (No. 57039)<br>Ashley Mitchell (No. 56889)<br>**FORWARD JUSTICE**<br>P.O. Box 1932<br>Durham, NC 27702<br>Telephone: 919-907-8586<br>cswain@forwardjustice.org<br>kroblez@forwardjustice.org<br>amitchell@forwardjustice.org | Jeffrey Loperfido (No. 52939)<br>jeffloperfido@scsj.org<br>**SOUTHERN COALITION FOR SOCIAL JUSTICE**<br>PO Box 51280<br>Durham, NC 27717<br>Telephone: 919-794-4213<br><br>Andrew Garber* (N.Y. Bar No.: 5684147)<br>**BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW**<br>120 Broadway<br>New York, NY 10005<br>Telephone: 646-292-8310<br>garbera@brennan.law.nyu.edu<br><br>Maura Eileen O'Connor* (N.Y. Bar No.: 4312302)<br>Justin Lam* (D.C. Bar No.: 1766514)<br>**BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW**<br>1140 Connecticut Avenue NW<br>Suite 1150<br>Washington, DC 20036<br>Telephone: 202-753-5911<br>oconnore@brennan.law.nyu.edu<br>lamju@brennan.law.nyu.edu<br><br>*Counsel for Proposed Intervenor-Defendants*<br><br>**\****Application for Special Admission Forthcoming* |

## CERTIFICATE OF WORD COUNT UNDER LOCAL RULE 7.2(F)

I certify that this Reply Brief complies with Local Rule 7.2(f), in that the word count function of Microsoft Word shows the brief to contain 2,117 words, excluding those portions of the brief permitted to be excluded by the Rule.

/s/ *Jeffrey Loperfido*
Jeffrey Loperfido

Jeffrey Loperfido (No. 52939)
jeffloperfido@scsj.org
**SOUTHERN COALITION FOR SOCIAL JUSTICE**
PO Box 51280
Durham, NC 27717
Telephone: 919-794-4213

*Counsel for Proposed Intervenor-Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2025, I electronically filed the foregoing CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS BY GABRIELA ADLER-ESPINO, RANI DASI, MARY KAY HELING, AUDREY MEIGS, LARRY REPANES, AMY GRACE BRYANT, RALIM ALLSTON, KEMEKA SIDBURY, NAACP NORTH CAROLINA, AND THE LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel for all parties.

/s/ *Jeffrey Loperfido*
Jeffrey Loperfido

Jeffrey Loperfido (No. 52939)
jeffloperfido@scsj.org
**SOUTHERN COALITION FOR SOCIAL JUSTICE**
PO Box 51280
Durham, NC 27717
Telephone: 919-794-4213

*Counsel for Proposed Intervenor-Defendants*