# IN UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> NORTH CAROLINA STATE BOARD OF ELECTIONS, *et al.*, <br><br> Defendants. | Case No. 5:25-cv-00283-M-RJ |

**MEMORANDUM IN SUPPORT OF THE NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS' MOTION FOR RECONSIDERATION OF ITS MOTION TO INTERVENE AS DEFENDANT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD............................................................................................................ 6

ARGUMENT......................................................................................................................... 6

I. The Court erred in finding that the existing parties adequately represented the interests of the Alliance. ................................................................................................................. 7

   A. The consent judgment threatens the interests of the Alliance and its members................... 7

   B. The Board cannot adequately represent the Alliance's interests because it sought to settle the case from the start.................................................................................................. 8

II. The Alliance should be afforded an opportunity to be heard on its objections to the consent judgment. ......................................................................................................................... 10

CONCLUSION.................................................................................................................... 13

**INTRODUCTION**

The North Carolina Alliance for Retired Americans ("Alliance") moves for reconsideration of the Court's denial of the Alliance's motion to intervene as a defendant. In its order entering the consent judgment between the U.S. Department of Justice and the North Carolina State Board of Elections, the Court found that "all interests are adequately represented" by the existing parties and denied as moot the Alliance's motion. ECF No. 72 at 12. That finding was in error. DOJ and the Board do not adequately represent the Alliance's unique and paramount interests in ensuring its members' votes are counted, that they may vote by regular ballot, and that their sensitive private information is kept confidential. To the contrary, DOJ and the Board together devised a plan that threatens each of those interests. *See United Guar. Residential Ins. Co. of Iowa v. Phila. Sav. Fund Soc'y*, 819 F.2d 473, 476 (4th Cir. 1987) (finding reversible error when district court found adequate representation even though existing defendant and proposed intervenor might be "working at cross purposes").

Worse still, because DOJ and the Board have been aligned since the initiation of this lawsuit, denying the Alliance's motion to intervene deprived the Court of hearing from the voters who are harmed by the consent judgment—or indeed from *any* party opposed to the consent judgment. The absence of any adversarial process has serious consequences for voters: None of the existing parties, for instance, informed the Court that the Board's program implementing the consent judgment would require election officials to *throw out* any ballots cast in state and local elections by covered voters if they fail—for whatever reason—to take the steps now required by the Board. *See* Ex. A, Numbered Memo 2025-02 at 5. If afforded the opportunity to be heard, the Alliance would have explained that disenfranchising voters in this manner raises several concerns under the U.S. Constitution, the Civil Rights Act, and the Voting Rights Act. But the Court gave

its seal of approval to a plan that would discount ballots cast by eligible voters without permitting briefing on the serious legal rights imperiled by the Board's plan.

To ensure that the Alliance's interests are adequately represented—and to ensure that North Carolina voters have any voice in this litigation—the Court should grant the Alliance's motion to intervene. And to ensure that intervention is meaningful and to prevent the injustice of granting a consent judgment without affording the Alliance and the voters it represents an opportunity to be heard, the Court should withdraw its order entering the consent judgment and schedule adversarial briefing on the parties' motion to approve the consent judgment, which it has the power to do under Federal Rule of Civil Procedure 59(e).

## BACKGROUND

This lawsuit originates from the State Board's negligence in collecting voter data—not the wrongdoing of any North Carolina voters. Specifically, for years the Board failed to consistently collect driver's license numbers and the last four digits of social security numbers from voters and to consistently record that information when received. As a result, its voter records lack that information for some voters. But as the North Carolina Supreme Court made clear in litigation earlier this year, voters have done nothing wrong—there is no reason to believe that any voters whose information is incomplete in state databases are ineligible to vote—and the Board itself is "primarily, if not totally" responsible for the recordkeeping problems. *Griffin v. N. C. State Bd. of Elections*, 387 N.C. 542, 544, 913 S.E.2d 894, 896–97 (2025).

DOJ filed this suit on May 27, 2025, alleging that North Carolina was out of compliance with the Help America Vote Act ("HAVA") because the Board's voter files lacked driver's license numbers and the last four digits of social security numbers for some North Carolina voters. Though the Board and its Executive Director, Sam Hayes, are nominally defendants, it only took one day for Hayes to make clear that he supported DOJ's suit, saying in response to the suit that the Board's

2

"failure to collect the information required by HAVA has been well documented" and that he is "committed to bringing North Carolina into compliance with federal law." Ava Brendgord, *NC State Board of Elections responds after U.S. DOJ files lawsuit for allegedly failing to maintain accurate voter list*, WCET News (May 28, 2025), https://perma.cc/CL5U-HU3P; *see also* Bryan Anderson, *NCSBE executive director supports Trump admin voter roll lawsuit, also wants detailed state audit,* Anderson Alerts (June 3, 2025), https://perma.cc/RF8M-9G8R (reporting that Hayes said in an interview that he "fully supports" DOJ's lawsuit).

The Alliance moved to intervene just six days after suit was filed. *See* ECF No. 8 ("Mot. Intervene"). The Alliance sought to protect the interests of its over 58,000 members in North Carolina, many of whom have been voting for years or even decades without issue. Its intervention papers laid out in detail how its members would be at risk of being disenfranchised if they were forced to re-register or provide additional information to state authorities before being allowed to vote, Mot. Intervene at 10–12; why the Alliance had legally protectible interests in defending the voting rights of its members and in conserving its finite resources, *id.* at 12–18; and why the existing parties—governmental entities that were not only aligned with the plaintiff but voiced their support for the lawsuit and then immediately capitulated to DOJ—did not adequately represent the Alliance's and its members' different interests, including in protecting their fundamental right to vote, *id.* at 18–21.

DOJ opposed the Alliance's intervention, arguing that voters could not possibly be harmed by the lawsuit. It assured the Court that the case only concerned "administration requirements" under HAVA and so could not possibly "implicate any individual rights" or "impair the right to vote." ECF No. 55 ("DOJ Br.") at 8, 10–11. The Board likewise argued that DOJ merely sought to require it to "collect" missing information and "update the registration database." ECF No. 56

3

("State Br.") at 6–8. DOJ next argued that the Board adequately represented the Alliance's interests because they both "share the same objective." DOJ Br. at 12–13 (quotation omitted). Tellingly, the Board itself never suggested that it adequately represented the interests of the Alliance. *See generally* State Br. at 5–6.

DOJ's and the Board's statements to the Court told one story, while their actions in public revealed another. Just days after DOJ assured the Court the case did not concern "individual rights" and that the Board and the Alliance shared the "same objective," the Board announced it had "tentatively signed off on" a plan with DOJ that would disenfranchise voters who did not take the steps now mandated by that plan, as well as require many covered voters to cast provisional rather than regular ballots. *See generally* ECF No. 58-1. After some more back and forth, DOJ and the Board jointly presented their plan to the Court as a proposed consent judgment on September 4, 2025. *See* ECF No. 71-1.

The proposed consent judgment has two main features. First, certain voters for whom the Board's records lack driver's license numbers or the last four digits of the voter's social security number will be sent two rounds of mailings asking them to provide that information. *Id.* at 8. If they do not provide the information in advance, then they will be forced to cast a provisional rather than regular ballot at the polls on election day and will again be requested to provide that information. *Id.* at 8–9. The proposed consent judgment filed with the Court then promises that provisional ballots will "be counted for Federal elections" even if the voter does not provide the requested information. *Id.* at 9.

Left unsaid in the court papers is what happens for state and local elections if a voter does not provide the requested information. The Board announced the answer in a public memo, approved just a few days before the Board put its proposed consent judgment before the Court:

Ballots cast by voters who do not adequately remedy the Board's failures *will "not [be] counted in state and local contests."* Ex. A at 5 (emphasis added). The memo also explained that, even if a voter does provide the requested information, but the voter's information does not match up *precisely* with government records, then the voter's ballots will be discounted in state and local elections, unless the voter cures by showing an acceptable form of ID. *Id.*

The second main feature of the proposed consent judgment is that it grants DOJ full access to North Carolina's voter records, defined to include each registrant's "full name, date of birth, residential address, his or her driver's license number or state identification number or the last four digits of the registrant's social security number." ECF No. 71-1 at 11–12. States are required to compile that information under HAVA, but the federal government generally has no access to that sensitive personal information. Despite proposing DOJ receive unfettered access to North Carolina's voter files, neither DOJ nor the Board informed the Court of what North Carolina law has to say on the issue. But State law designates several categories of voter data covered by the consent judgment as "confidential," N.C. Gen. Stat. § 163-82.10(a1), and strictly restricts disclosure of social security numbers and other personal identifying information (including driver's license numbers), *id.* § 132-1.10(b).

Finally, though DOJ and the Board opposed the Alliance's motion to intervene, they nonetheless acknowledged in their motion for approval of the consent judgment that other parties may have a perspective to add and asked the Court to allow *amicus curiae* submissions before the consent judgment was entered, with a suggested *amici* deadline of September 17. *See* ECF No. 71 at 6. But on September 8—before the parties' suggested *amici* deadline, and before any party weighed in—the Court entered the consent judgment. *See* ECF No. 72. In doing so, the Court found that "all interests are adequately represented" by the existing parties and denied as moot the

Alliance's motion to intervene, as well as later-filed motions to intervene by two other groups. *Id.* at 12.

## LEGAL STANDARD

Though the federal rules "do not specifically address motions to reconsider," such motions are nonetheless "common in federal practice." *DIRECTV, INC. v. Hart*, 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004). The purpose of a motion for reconsideration is to correct "manifest errors of law or fact or to present newly discovered evidence." *Id.* (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). Reconsideration is appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Id.* (quoting *Harsco*, 779 F.2d at 909). For instance, reconsideration is warranted where "the parties were not able to brief and argue the issues upon which the order . . . ultimately was decided." *Id.* (granting motion to reconsider in part).

Courts may also reconsider judgments under Federal Rule of Civil Procedure 59(e). Though it should be used "sparingly," the rule allows courts to "correct a clear error of law or prevent manifest injustice" in a judgment. *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quotation omitted). The purpose of the rule is to allow "a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Id.* (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995)). Motions seeking relief under Rule 59(e) must be filed within 28 days of judgment. *See* Fed. R. Civ. P. 59(e).

## ARGUMENT

The Court should reverse its denial of the Alliance's motion to intervene and withdraw its order entering the consent judgment until the Alliance has had an opportunity to be heard. The

Court's basis for denying the Alliance's motion—that the existing parties adequately represented its interests—is a manifest error that cannot be supported by the facts or the law. The existing parties were never adverse to each other and in fact together devised a plan mere weeks after the filing of this lawsuit to saddle North Carolina voters, including the Alliance's members, with the unlawful burden of fixing the Board's recordkeeping gaps. Far from representing the Alliance's interests and the interests of its members, DOJ and the Board's joint actions threaten those very interests.

I. **The Court erred in finding that the existing parties adequately represented the interests of the Alliance.**

The Court made a manifest error in finding that the existing parties—DOJ and the State Board—adequately represented the interests of the Alliance. Rather than representing the voting rights of North Carolinians, the Board immediately sought to settle the suit and join forces with DOJ in developing a program that is sure to disenfranchise voters and expose their sensitive private information. Indeed, it is difficult to imagine a stronger case for intervention than here, where two aligned parties quickly settle a case that threatens the fundamental rights of voters in the absence of those who stand to be disenfranchised.

A. **The consent judgment threatens the interests of the Alliance and its members.**

The Alliance's primary interest in this action is defending the rights of its members.[1] *See* Mot. Intervene at 14–17. Far from adequately representing the rights of Alliance members, DOJ and the Board agreed to harm those rights in at least three ways: first, by disenfranchising voters, including long-registered Alliance members, who do not comply with the Board's scheme by

---

[1] This motion focuses on the adequate representation issue of intervention as of right because that is the only issue referenced by the Court in denying the motion to intervene. The Alliance has previously briefed the other requirements to intervene as of right and the requirements for permissive intervention in depth. *See* Mot. Intervene at 14–18, 21–23; Reply in Supp. of Mot. Intervene at 2–6, 10, ECF No. 60.

providing their driver's license or social security information, or who provide the information but it does not match government records; second, by requiring Alliance members who do not provide the information in advance to cast provisional rather than regular ballots; and third, by granting DOJ broad access to the Alliance member's voting records, despite state law providing privacy protection for much of that information. The Board plainly cannot adequately represent these interests while posing the primary threat to those same interests.

The Alliance also has a significant organizational interest in preserving its own resources. *See* Mot. Intervene at 17–18. But to fulfill its mission and prevent its members from being disenfranchised, the consent judgment would require the Alliance to undertake significant operations to help its members comply with the Board's plan so that they may cast regular ballots and have their ballots count, at the direct expense of the Alliance's other voter registration and engagement work. DOJ and the Board plainly do not share an interest in preserving the finite resources of private entities like the Alliance; they are governmental entities focused on election administration and remedying the Board's administrative negligence.

### B. The Board cannot adequately represent the Alliance's interests because it sought to settle the case from the start.

The finding that DOJ and the Board adequately represent the Alliance's interest is wrong on the law. The Fourth Circuit commands a "liberal" approach to intervention "to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). Under that liberal approach, it is "untenable" for a district court to conclude that a state defendant adequately represents the interests of a proposed intervenor when the state defendant makes clear that it "agrees with the" plaintiff and fails to "draw[] the court's attention" to authority that precludes the relief the plaintiff seeks. *Id.* at 730

(reversing denial of motion to intervene). That is exactly what happened here: The Board has made clear from the outset that it agrees with DOJ's position—signaling support for the suit since the day after DOJ filed its lawsuit and then signing off on a tentative agreement mere weeks later—and it has failed to lodge any objections to DOJ's complaint.

A state defendant simply cannot adequately represent the interests of a private party seeking to defend the voting rights of its members when that defendant capitulates at the outset rather than fighting to protect the interests of voters in its state. *See 1789 Found. Inc. v. Fontes*, No. CV-24-02987, 2025 WL 834919, at *3 (D. Ariz. Mar. 17, 2025) (finding proposed intervenor Arizona Alliance for Retired Americans' interests not adequately represented by state defendant in lawsuit relating to voter lists where state defendant filed an answer whereas intervenor sought to move to dismiss); *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (finding state did not adequately represent proposed intervenor's interest based on the possibility that the state board may settle lawsuit relating to voter list maintenance); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998) (finding inadequate representation when existing defendant "may face the irresistible temptation to work out settlements").

Even aside from the fact that DOJ and the State Board are on the same team here, showing inadequate representation is meant to be only a "minimal challenge." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195–96 (2022). That is particularly so in cases where, as here, a private party, which represents its own interests "full stop," seeks to intervene in a case involving a state defendant, which must consider "broader public-policy implications." *Id.* at 196 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Courts thus "often conclude[] that governmental entities do not adequately represent the interests of aspiring

9

intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). And "fail[ing] to heed the Supreme Court's determination that the burden on the applicant of demonstrating a lack of adequate representation should be treated as minimal" constitutes reversible error. *Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991) (quoting *Trbovich*, 404 U.S. at 538 n.10).

The primary exception to this general rule in favor of intervention is when "the would-be intervenor shares the same ultimate objective as an existing governmental party." *Ohio Valley Env't Coal., Inc. v. McCarthy*, 313 F.R.D. 10, 28 (S.D.W. Va. 2015). In such circumstances, there is a rebuttable "presumption of adequate representation." *Id*. (quotation omitted). But that is plainly not the case here, where the Board seeks to settle the case and give DOJ everything it wants and more, while the Alliance seeks to vigorously defend the voting rights of its members. *See Stuart v. Huff*, 706 F.3d 345, 352 (4th Cir. 2013) (explaining that, where an existing party and intervenor have "divergent objectives," claim of adequate representation is undermined). Simply put, the public record here shows "collusion" between DOJ and the Board, so the presumption of adequate representation does not apply. *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). Since the Board and the Alliance here are "working at cross purposes," "it was error to deny" the Alliance's motion to intervene. *United Guar. Residential Ins. Co. of Iowa*, 819 F.2d at 476 (reversing district court's denial of motion to intervene).

## II. The Alliance should be afforded an opportunity to be heard on its objections to the consent judgment.

The harm from failing to allow intervention here is clear. Because the existing parties in this suit were aligned from the outset, and no non-party was permitted an opportunity to be heard before the Court entered the consent judgment, the Court was never presented with critical analysis of the consent judgment. The Alliance's motion to intervene should be granted, and to ensure that intervention is meaningful, the Court should withdraw its order granting the consent judgment and

10

instead allow for adversarial briefing. The Alliance would present at least three important arguments.

*First*, the Board's attempt to disenfranchise voters violates federal law. Specifically, the Board's plan directs county officials to reject ballots cast in state and local elections if voters do not comply with the plan by providing their driver's license or social security information, or if they provide the information but it fails to match government records and they are unable to cure that matching error. In doing so, the Board improperly burdens the right to vote under the U.S. Constitution because it would disenfranchise these voters without adequately serving any state interest. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). These voters—not one of whom has been shown ineligible to vote—have done nothing wrong. Instead, the Board itself is "primarily, if not totally" responsible for the recordkeeping problems it seeks to correct. *Griffin*, 387 N.C. at 544, 913 S.E.2d at 896–97. The desire to remedy its own recordkeeping negligence cannot justify disenfranchising voters. *See id.* ("[N]egligence on the part of the government official charged with properly registering and entering voters onto the voter rolls should not negate the vote of an otherwise lawful voter."). Indeed, the Board itself has previously argued *against* refusing to count ballots cast by "lawfully eligible voters" based on "technical errors in the registration process or mechanics of voting." State Bd.'s Resp. Br. at 45, *Griffin v. N.C. State Bd. of Elections*, No. COA25-181 (N.C. Ct. App. Feb. 27, 2025).

Disenfranchising these voters also violates the Civil Rights Act's materiality provision, which prohibits states from denying anyone the right vote based on "an error or omission" that "is not material in determining whether such individual is qualified under State law to vote in such election," 52 U.S.C. § 10101(a)(2)(B), and the Voting Rights Act's Section 11(a), which prohibits willfully failing or refusing to "tabulate, count, and report" a vote from someone who is "qualified

11

to vote." *Id.* § 10307(a).

*Second*, the consent judgment's command that voters who provide their driver's license and social security information on election day nonetheless cast provisional ballots similarly burdens the right to vote and lacks any legal justification. As the Board itself has repeatedly acknowledged, HAVA does not require relegating these voters to provisional status, and in fact federal law prohibits such disfavored treatment. *See* State Bd. Defs.' Reply in Supp. of Mot. to Dismiss at 1, 5, 9–10, *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, No. 5:24-CV-547-M (E.D.N.C. Oct. 11, 2024), ECF No. 53 (explaining HAVA does not require voters who do not provide driver's license or social security information to be "relegate[d] to provisional voting" and that "[r]equiring provisional ballots from eligible voters—those who are 'entitled to' or 'otherwise qualified to vote'—violates Section 11(a) of the Voting Rights Act."); Defs.'-Appellants' Opening Br. at 33–34, *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, No. 24-2044 (4th Cir. Oct. 23, 2024), Doc. 49 (maintaining "that HAVA does not require . . . demanding provisional ballots from these eligible voters.").

*Third*, the consent judgment's disclosure of North Carolina voters' sensitive information to DOJ runs afoul of state privacy laws. The consent judgment would grant DOJ unfettered access to voters' driver's license numbers, dates of birth, and partial social security numbers, all of which are meant to be kept "confidential" under state law. N.C. Gen. Stat. § 163-82.10(a1); *see also id.* § 132-1.10(b) (restricting disclosure of social security numbers and "other personal identifying information" absent specific exceptions). HAVA does not grant the federal government access to this information, nor does it purport to override state privacy protection laws, and the parties never explain how granting DOJ broad access to this information is necessary to serve or even relevant to any legitimate purpose.

12

Case 5:25-cv-00283-M-RJ     Document 74     Filed 09/16/25     Page 14 of 18

Each of these threats the consent judgment poses to the Alliance's members underscores the fact that DOJ and the Board do not adequately represent the Alliance's interests. The Alliance should therefore be afforded the opportunity to fully present its objections to the consent judgment—which threatens North Carolina voters' constitutional and statutory rights—through the normal adversarial process, which even the State Board and DOJ suggested should be permitted in some form. It was a manifest error to find that the existing parties adequately represent the Alliance's interests, and it would be a manifest injustice if the Court maintained the consent judgment without giving the Alliance—which is entitled to intervention as of right—an opportunity to be heard. *See Pac. Ins. Co.*, 148 F.3d at 403 (explaining Rule 59(e) allows courts to "correct a clear error of law or prevent manifest injustice" in a judgment).

* * *

This Court recently acknowledged the "thoughtful and comprehensive arguments" provided by "multiple parties"—including the Alliance as an intervenor—and stated that such "thoroughness has significantly aided the court's decisional process." *Griffin v. N. C. State Bd. of Elections*, 781 F. Supp. 3d 411, 423 (E.D.N.C. 2025) (granting summary judgment in favor of the Alliance). Respectfully, the Court should permit arguments from the Alliance in this matter before maintaining a consent judgment that threatens to disenfranchise voters and risks unlawful exposure of their most sensitive personal information.

## CONCLUSION

The Alliance respectfully requests that the Court reconsider and grant the Alliance's motion to intervene as a defendant in this matter, withdraw its entering of the consent judgment, and allow adversarial briefing on the motion to approve the consent judgment.

September 16, 2025        Respectfully submitted,

/s/ Lalitha D. Madduri
Lalitha D. Madduri*
Christopher D. Dodge*
Branden D. Lewiston**
Tina Meng Morrison*
James J. Pinchak*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
lmadduri@elias.law
cdodge@elias.law
blewiston@elias.law
tmengmorrison@elias.law
jpinchak@elias.law

*Participating via Special Appearance
**Special Appearance Notice Forthcoming

Narendra K. Ghosh
N.C. Bar No. 37649
**PATTERSON HARKAVY LLP**
100 Europa Drive, Suite 420
Chapel Hill, NC 27217
Telephone: (919) 942-5200
nghosh@pathlaw.com

*Counsel for Proposed-Intervenor The North Carolina Alliance for Retired Americans*

## CERTIFICATE OF WORD COUNT

      Undersigned counsel certifies that this Memorandum complies with Local Rule 7.2(f), in that the word count function of Microsoft Word shows the brief to contain 4,595 words.

This 16 day of September, 2025

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that the foregoing document was served on the parties and all other registered users via CM/ECF.

This 16 day of September, 2025

                                              */s/ Lalitha D. Madduri*
                                              Lalitha D. Madduri