IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS; SAM HAYES, in his official capacity as Executive Director of the North Carolina State Board of Elections; FRANCIS X. DE LUCA, JEFF CARMON, STACY EGGERS IV, SIOBHAN O'DUFFY MILLEN, and ROBERT RUCHO, in their official capacities as Members of the North Carolina State Board of Elections; and STATE OF NORTH CAROLINA,

    Defendants.

Civil No. 5:25-cv-00283-M-RJ

### UNITED STATES' MEMORANDUM IN OPPOSITION TO THE MOTION FOR RECONSIDERATION OF MOTION TO INTERVENE BY THE NORTH CAROLINA ALLIANCE FOR RETIRED AMERICANS (DOC. 73) AND THE DEMOCRATIC NATIONAL COMMITTEE'S RENEWED MOTION TO INTERVENE (DOC. 75)

Plaintiff United States of America opposes: (1) the North Carolina Alliance for Retired Americans' ("NCARA") Motion for Reconsideration of its Motion to Intervene as Defendant to Intervene as a Defendant (Doc. 73) and its accompanying Memorandum of Law (Doc. 74, "NCARA Mem."); and (2) the Democratic National Committee's ("DNC") Renewed Motion to Intervene (Doc. 75) and its accompanying Memorandum of Law (Doc. 76, "DNC Mem.").[1]

---

[1] Although styled as a "Renewed Motion to Intervene," the DNC's Motion asks the Court to reconsider its order denying its motion to intervene. *See* DNC Mem., Doc. 76 at 3.

1

Neither NCARA nor the DNC can meet the heightened standards for reconsideration of the Consent Judgment and Order ("Consent Order") entered by the Court, which denied as moot their motions to intervene. *See* Consent Order, Doc. 72 at 12. Instead, both attempt to relitigate many of the same arguments they made in their earlier unsuccessful motions to intervene and memoranda,[2] with the addition of raising unfounded concerns about relief under the Consent Order. Their respective motions to intervene were fully briefed and were before the Court when it entered the Consent Order. The objections NCARA and the DNC now wish to lodge are contradicted by the plain language of the Consent Order, are constrained by Federal law, and wholly fail to meet their elevated burden for reconsideration of that ruling. Accordingly, Plaintiff United States of America respectfully requests that the Court deny the Motions by NCARA (Doc. 73) and the DNC (Doc. 75).

## BACKGROUND

On May 27, 2025, the United States filed its Complaint in this action, alleging that the Defendants did not comply with the statewide centralized voter registration database requirements of Section 303 of the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 21083, "with respect to the conduct of elections for *Federal office* in the State of North Carolina." Compl. ¶ 1, Doc. 1 at 1-2 (emphasis added). The Complaint makes clear that this action is directed at ensuring "the accuracy of voter records used for Federal elections." *Id.* ¶ 14; *see also id.* ¶¶ 5, 7, 11-12, 23-24, 31-32, 33(f), 34-37 (same). The request for relief made by the United States is similarly limited to declaratory and injunctive relief to remedy allegations of Defendants' noncompliance "with Section 303(a) of HAVA, 52 U.S.C. § 21083(a), with respect to implementation of HAVA's

---

[2] *See* NCARA's Mot. to Intervene, Docs. 7-8, and Notice, Doc. 58; DNC's Mot. to Intervene, Docs. 34-35.

computerized statewide voter registration requirements in elections for Federal office…" *Id.* at 16.

The Consent Order filed by the parties limited the relief to the administration of elections for Federal office in North Carolina, tracking the allegations in the Complaint and HAVA's scope. *See* Consent Order, Doc. 72. The terms of the Consent Order explicitly include the statement that "[t]he terms of this Order apply to all elections for Federal office held in North Carolina." *Id.* at 6, ¶ 2; *see also id.* at 6-9 (references to "Federal office" or to "Federal elections") . Defendants selected a provisional ballot as an administrative means to request the missing identifying number required by HAVA from voters who did not respond to Defendants' mailings. *See id.* at 8-9. The Consent Order makes clear that regardless of whether a voter supplies the identification information, "the vote cast for each Federal office on the provisional ballot will be counted." *Id.* at 9, ¶ 6(d).

The memorandum in support of the Joint Motion to Approve the Consent Judgment summarized Defendants' administrative process to remedy the HAVA violations. *See* Mem. in Supp. of Jt. Mot. to Approve Consent J., Doc. 71 at 3-4. When the Joint Motion was filed, Defendants' efforts already were bearing fruit. As the parties explained, "At the outset of this litigation, the records of approximately 100,000 voters lacked a driver's license or the last four digits of the voter's social security number as required by HAVA. As of September 2, 2025 [a few days before the joint motion was filed], that number is 81,810 and dropping as the State Board continues its efforts to collect this information from affected registrants." *Id.* at 5. These improvements are underway now to minimize – and potentially avoid altogether if fully successful – any inconvenience to North Carolina voters during the 2026 elections for Federal offices. No North Carolina voter has been or will be disenfranchised by this process, even if they are asked to vote provisionally. *See* Consent Order, Doc. 72 at 9, ¶ 6(d).

3

On September 8, 2025, the Court entered the Consent Order. Doc. 72. In doing so, the Court found "that all interests are adequately represented by the parties in this enforcement action…." *Id.* at 12. As a result, the Court denied all pending motions to intervene as moot. *Id.* On September 16, 2025, NCARA and the DNC filed the motions for reconsideration that are presently before the Court.[3]

## LEGAL STANDARDS

Motions pertaining to a final judgment such as the Consent Order entered in this case, Doc. 72, "trigger heightened standards for reconsideration." *Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). A motion to reconsider a final order filed within 28 days of entry of that order is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *Gelin v. Baltimore Cty., Md.*, 122 F.4th 531, 537 (4th Cir. 2024). The decision whether to alter or amend a judgment pursuant to Rule 59(e) is committed to the sound discretion of the district court. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 653-54 (4th Cir. 2002). The Fourth Circuit has identified three narrow circumstances that justify altering or amending a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available [previously]; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (quoting *Ingle v. Yelton,* 439 F.3d 191, 197 (4th Cir. 2006)). "'Such problems rarely arise and the motion to reconsider should be equally rare.'" *Gillis v. Murphy-Brown, LLC*, No. 7:14-cv-185-BR, 2018 WL 11401929, at *2 (E.D.N.C. Nov. 28, 2018) (citation omitted).

---

[3] A third group, the League of Women Voters of North Carolina, the NAACP North Carolina State Conference, and several individual voters, also filed a motion to intervene. *See* Docs. 39-40. Unlike NCARA and the DNC, however, that group has not requested the Court to reconsider its ruling denying intervention.

## ARGUMENT

The purpose of a motion for reconsideration "is to allow the Court [to] 'correct manifest errors of law or fact or to [consider] newly discovered evidence,' and are improper if they serve merely to ask the Court 'to rethink what the Court had already thought through – rightly or wrongly.'" *Ga.-Pac. Consumer Prods. v. Von Drehle Corp.*, 815 F. Supp. 2d 927, 929 (E.D.N.C. 2011) (citations omitted). The motions for reconsideration filed by NCARA and the DNC do not identify any manifest errors of law or fact or point to any evidence that was not already before the Court when it entered the Consent Order.

Instead, both groups ask the Court to rethink what it considered previously. NCARA raises three issues as the basis for its motion: (1) the Court's finding of adequate representation, Doc. 74 at 1-4, 7-10; (2) the Consent Order's limitation to only Federal elections, *id.* at 4-5, 11-12; and (3) unsubstantiated alarmist arguments that any records and data requested by the United States under the Consent Order will violate voter privacy in contravention of Federal law, the plain language of the Consent Order, and a protective order not yet issued by the Court, *id.* at 5, 12-13. The DNC is more circumspect than NCARA and limits its brief to the third argument raised by NCARA. Doc. 76 at 3-7.

The United States will respond briefly to the three arguments, each of which is insufficient to meet movants' heightened burden to vacate the Consent Order and allow them to intervene. *See Murphy Farms*, 326 F.3d at 514. For the reasons discussed below, this is not one of the "rare" occasions when the Court should second-guess itself and grant the requested relief. *Gillis*, 2018 WL 11401929, at *2. Therefore, the United States respectfully submits that the motions for reconsideration by NCARA (Doc. 73) and the DNC (Doc. 75) should be denied.

I.  **The Court already has considered NCARA's arguments about inadequate representation in denying NCARA's motion to intervene.**

NCARA contends that "DOJ and the [North Carolina State] Board [of Elections] have been aligned since the initiation of this lawsuit." NCARA Mem., Doc. 74 at 1. It cites to a statement made by Sam Hayes, the Board's Executive Director, that he "fully supports" the lawsuit filed by the United States and that "he is 'committed to bringing North Carolina into compliance with federal law.'" *Id.* at 2-3. It contends that statement shows: "[t]he existing parties were never adverse to each other" and "join[ed] forces" together to develop "a program that is sure to disenfranchise voters and expose their sensitive private information." *Id.* at 7. It goes on to deride the Board "because it sought to settle the case from the start." *Id.* at 8.

NCARA's baseless arguments can be rejected summarily for two reasons. First, the procedural history flatly contradicts NCARA's contentions. Defendants executed waivers of service after the case was filed (Docs. 14-21), providing the parties an opportunity to attempt to resolve their differences through settlement. That approach is consistent with the mandate that all litigants attempt "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The parties twice requested an extension for Defendants to file their Answer or other responsive pleading to allow settlement discussions to continue. *See* Docs. 65-66. After three months of extensive negotiations, the parties resolved their differences. On September 4, 2025, the parties filed a Joint Motion to Approve the Consent Judgment and Order and Memorandum in Support. *See* Docs. 70-71.

Second, NCARA simply repackages the same arguments it made previously, which were before the Court when it issued the Consent Order. *See* NCARA's Mem. in Supp. of Mot. to Intervene, Doc. 8 at 18-21; NCARA's Notice, Doc. 58. "The Fourth Circuit has held that mere reassertions of previously raised allegations do not constitute justifiable grounds for successful

6

Rule 59(e) motions." *Bey v. North Carolina*, No. 2:07-cv-24-FL, 2007 WL 9718309, at *1 (E.D.N.C. Nov. 30, 2007) (citing cases including *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). In particular, "When the motion raises no new arguments, but merely requests the district court to reconsider a legal issue or to 'change its mind,' relief is not authorized." *Pritchard v. Wal-Mart Stores, Inc.*, 3 Fed. App'x. 52, 53 (4th Cir. 2001) (per curiam) (quoting *United States v. Williams*, 674 F.2d 310, 312 (4th Cir. 1982)). In other words, "[w]hatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D. Va. 1977). That is what movants attempt to do here. Their motions should be denied.

II.  **The scope of HAVA, the HAVA claim in this action, and the Consent Order can only apply relief to elections for Federal office, and not state and local elections.**

NCARA next argues that "[l]eft unsaid in the court papers is what happens for state and local elections if a voter does not provide the requested information" missing from their voter record. NCARA Mem., Doc. 74 at 4. According to NCARA, the State Board of Elections "directs county officials to reject ballots cast in state and local elections if voters do not comply with the plan by providing their driver's license or social security information…." *Id.* at 11. NCARA contends that if that should occur, it would "improperly burden[] the right to vote under the U.S. Constitution," would violate "the Civil Rights Act's materiality provision," as well as Section 11(a) of the Voting Rights Act. *Id.* at 11-12. NCARA's contentions parallel similar arguments it made earlier that the United States was seeking to disenfranchise voters in Federal elections. In its intervention motion it maintained, "[t]he inevitable consequence of the federal government's lawsuit is clear: voters who cannot be contacted [by the State Board of Elections] stand to be kicked off the rolls, even if they complied with HAVA when they registered or never had to comply with HAVA at all." NCARA's Mem. in Supp. of Mot. to Intervene, Doc. 8 at 2. However, no such

7

disenfranchisement can occur for Federal elections, the only elections that are properly before the Court. *See* Consent Order, Doc. 72 at 8-9; *see also id.* at 6.

NCARA's argument misapprehends both the scope of HAVA and Rule 24 intervention. As to the former point, the statute itself puts to rest NCARA's efforts to inject speculative allegations about state and local elections into this action. HAVA's purpose as stated in the preface is instructive:

> To establish a program to provide funds to States to replace punch card voting systems, to establish the Election Assistance Commission to assist in the administration of Federal elections and to otherwise provide assistance with the administration of certain Federal election laws and programs, to establish minimum election administration standards for States and units of local government with responsibility for the administration of Federal elections, and for other purposes.

Help America Vote Act, Pub. L. 107-252, 116 Stat. 1666 (2002). Section 303 of HAVA is the subject of this case. That section provides, in pertinent part, that the computerized statewide voter registration list "shall serve as the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. § 21083(a)(1)(A)(viii). It is unremarkable that courts examining HAVA's unambiguous requirements have concluded that they apply only to Federal elections. *See generally Crowley v. Nevada ex rel. Nev. Sec'y of State*, 678 F.3d 730, 735 (9th Cir. 2012) ("The preeminent purpose of HAVA is to assist states with the administration and regulation of *federal elections*.") (emphasis in original); *Broyles v. Texas*, 618 F. Supp. 2d 661, 692-93 (S.D. Tex. 2009) (same). As a result, efforts to expand requirements under HAVA to state and local elections have been uniformly rejected. *See Crowley*, 678 F.3d at 732 ("HAVA § 301 was not intended to benefit voters and candidates in local elections…"); *ACLU of N.M. v. Santillanes*, 546 F.3d 1313, 1325 (10th Cir. 2008) (rejecting argument that HAVA preempted a municipal law that only applied to municipal elections). "HAVA applies only to federal elections." *Bryan v.*

8

*Abramson*, No. 10-cv-00079, 2010 WL 3447681, at *4 (D.V.I. Aug. 31, 2010). Under the plain language of the Complaint and the Consent Order, the relief obtained by the United States can apply only to the conduct of Federal elections.

As to the latter point, Rule 24 does not give NCARA, as a putative intervenor, an unfettered license to recraft the litigation to encompass their own grievances, whether real or imagined. It is well established that "[t]he purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved…. However, the rule is not intended to allow for the creation of whole new suits by intervenors." *Washington Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (collecting citations from several federal circuits). That is precisely what NCARA seeks to do here. Even if movants met their high burden of reconsideration – which they have not – NCARA's efforts, which the DNC has supported in an external statement,[4] provide an alternative basis for denying intervention. *See Am. Coll. Of Obstetricians & Gynecologists v. Food & Drug Admin.*, 467 F. Supp. 3d 282, 292 (D. Md. 2020) (denying permissive intervention where the proposed intervenors sought to inject into the case legal issues outside the scope of the complaint).

That does not leave either NCARA, or the DNC, without recourse. Should their speculative allegations of disenfranchisement in state and local elections materialize into one or more tangible claims, they are free to bring their own action. The DNC acknowledges as much. It has attached a written notice of intent to file suit against the North Carolina Board of Elections under the National Voter Registration Act. *See* Ltr. from Seth Waxman to Sam Hayes, Doc. 76-1. Accordingly, the

---

[4] *See* DNC press release dated Sept. 4, 2025 ("… there is still work to be done to ensure that North Carolina voters' voices are heard in *state and local elections*…") (emphasis added), *available at* https://democrats.org/news/in-a-major-victory-for-nc-voters-doj-and-nc-state-board-of-elections-back-down-agree-that-ballots-cast-by-over-80000-nc-voters-must-be-counted-in-federal-elections/ (last visited Nov. 25, 2025).

movants' contentions about what might happen in state and local elections do not provide a basis for reconsidering the Consent Order and the denial of their motions to intervene.

**III.     Any records and data requested under the Consent Order are protected by Federal privacy laws under the terms of a protective order.**

The third grounds for reconsideration raised by NCARA and the DNC is that any records and data produced to the United States under the Consent Order will violate voter privacy. *See* NCARA Mem., Doc. 74 at 5, 12-13; DNC Memo., Doc. 76 at 3-7. That basis also fails to meet their heightened burden under Rule 59(e).

The United States has not made a request for records and data under the Consent Order. Should it do so, paragraph 11 of the Consent Order already spells out the scope and restrictions on the use and protection of any produced voter records. First, the request is limited to "non-privileged documents created or maintained by State Board Defendants regarding compliance with this Order or compliance with Section 303(a)(5) of HAVA, including voter records in the State's HAVA List" and other relevant documents. Consent Order, Doc. 72 at 11. Second, "[a]ll records and data received by the United States from the State Board Defendants will be kept securely and treated consistently with the Privacy Act, 5 U.S.C. § 552a, et seq." *Id.* at 12. Third, "[t]o the extent confidential records or data is requested, the State Board Defendants reserve the right to seek a protective order from the court." *Id.* By the terms of the Court's Consent Order, access to any HAVA identifying information that is produced is hardly "unfettered access…" NCARA Mem., Doc. 74 at 12.

Moreover, the Civil Rights Division has longstanding protocols in place consistent with Privacy Act protections, as explained in its Privacy Policy.[5] The full list of routine uses for this

---

[5] *See* https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

10

Case 5:25-cv-00283-M-RJ     Document 80     Filed 11/28/25     Page 10 of 14

collection of information can be found in the systems of records notices ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 47611 (Aug.11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). The statutes cited in the SORNs for routine use include HAVA, among other statutes. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51. Contrary to what NCARA and the DNC contend, if any records or data are produced to the United States, they will be protected in full compliance with the Court's Consent Order and Federal law.Moreover, the Civil Rights Division uses a secure file-sharing system, Justice Enterprise File Sharing ("JEFS") that has strict access controls to ensure that each user can only access their own files and is also covered by SORNs.[6] The danger of poorly thought-out proposals, such as what the DNC proffers, would risk violating the privacy rights of North Carolina voters – the very harm that the movants maintain they are trying to prevent.

NCARA and the DNC have provided their input on any records or data is produced. The Court is free to take that input into consideration, just as it would for any other amici. To reiterate a point the United States made in opposing their motions to intervene: "While a would-be intervenor may prefer party status to that of friend-of-the-court, the fact remains that amici often make useful contributions to litigation. The availability of such alternative avenues of expression reinforces [the] disinclination to drive district courts into multi-cornered lawsuits by

---

[6] *See* JUSTICE/DOJ-014, Department of Justice Employee Directory Systems, last published in full at 74 Fed. Reg. 57194 (Nov. 4, 2009), and modified at 82 Fed. Reg. 24151, 24153 (May 25, 2017); JUSTICE/DOJ-002, Department of Justice Computer Systems Activity and Access Records, last published in full at 64 Fed. Reg. 73585-02 (Dec. 30, 1999), and modified at 66 Fed. Reg. 8425-02 (Jan. 31, 2001) and 82 Fed. Reg. 24147-01 (May 25, 2017).

11

indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto." *Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013). That is especially true here, where the case has been fully resolved through a final judgment and order. Therefore, because the movants have not met their heightened burden under Rule 59(e), their respective motions for reconsideration should be denied.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny NCARA's Motion for Reconsideration of its Motion to Intervene as Defendant to Intervene as a Defendant (Doc. 73) and the DNC's Renewed Motion to Intervene (Doc. 75).

Respectfully submitted this 28th day of November, 2025,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division


*/s/ James Thomas Tucker*
MAUREEN RIORDAN
Acting Chief, Voting Section
TIMOTHY F. MELLETT
JAMES THOMAS TUCKER
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Telephone: (202) 307-2767
Email: james.t.tucker@usdoj.gov

**CERTIFICATE OF WORD COUNT PURSUANT TO LOCAL RULE 7.2(f)**

I hereby certify on November 28, 2025, that this Memorandum complies with Local Rule 7.2(f), in that the word count function of Microsoft Word shows the brief to contain 3,570 words, excluding those portions of the brief permitted to be excluded by the rule.

*/s/ James Thomas Tucker*
James Thomas Tucker
JAMES THOMAS TUCKER
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.923
Washington, D.C. 20530
Telephone: (202) 307-2767
Email: james.t.tucker@usdoj.gov

Counsel for Plaintiff United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

                                              */s/ James Thomas Tucker*
                                              James Thomas Tucker
                                              JAMES THOMAS TUCKER
                                              Attorney, Voting Section
                                              Civil Rights Division
                                              U.S. Department of Justice
                                              4 Constitution Square
                                              150 M Street NE, Room 8.923
                                              Washington, D.C. 20530
                                              Telephone: (202) 307-2767
                                              Email: james.t.tucker@usdoj.gov

                                              Counsel for Plaintiff United States of America