**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**NO. 5:25-CV-00283-M**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANTS'** |
| NORTH CAROLINA STATE BOARD OF | ) | **RESPONSE IN OPPOSITION TO** |
| ELECTIONS; SAM HAYES, in his official | ) | **MOTION FOR RECONSIDERATION** |
| capacity as Executive Director of the North | ) | **AND RENEWED MOTION TO** |
| Carolina State Board of Elections; FRANCIS | ) | **INTERVENE** |
| X. DE LUCA, JEFF CARMON, STACY | ) | |
| EGGERS IV, SIOBHAN O'DUFFY | ) | **[D.E. 73, 75]** |
| MILLEN, and ROBERT RUCHO, in their | ) | |
| official capacities as Members of the North | ) | |
| Carolina State Board of Elections; and | ) | |
| STATE OF NORTH CAROLINA, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants North Carolina State Board of Elections, Sam Hayes, in his official capacity as Executive Director of the State Board of Elections and Francis X. De Luca, Jeff Carmon, III, Stacy Eggers, IV, Siobhan O'Duffy Millen, and Robert Rucho, sued in their official capacities as Members of the State Board of Elections, and the State of North Carolina, by and through the State's Chief Election Officer, (collectively "State Board Defendants" or "Defendants"), through undersigned counsel, hereby provide this response to the motion for reconsideration of its motion to intervene filed by North Carolina Alliance for Retired Americans ("NC ARA") [D.E. 73], and in response to the renewed motion to intervene filed by the Democratic National Committee ("DNC") [D.E. 75] (collectively "Proposed Intervenors"). For the reasons stated below, these motions should be denied.

## NATURE OF THE CASE & RELEVANT FACTS

*The Instant Action.*

This action was commenced on May 27, 2025. [D.E. 1]  The complaint is a federal enforcement action brought by the Attorney General of the United States on behalf of the United States of America against State Board Defendants to ensure all necessary steps are being taken to remain in compliance with federal law. *Id.*, ¶¶ 22-24.  Plaintiff alleges that Defendants did not maintain an accurate statewide voter registration list in violation of Section 303(a)(5) of Help America Vote Act of 2002 ("HAVA"). *Id.*, ¶¶ 5, 34-42.

Plaintiff sought prospective relief that would direct Defendants to comply with HAVA through a plan to correct these alleged violations by contacting and collecting the missing information from voters and updating the voter registration list to reflect the information, verify it with the Court and Plaintiff, and update registration and training materials to reflect the requirements of Section 303(a)(5). *Id.*, pp 16-17.  This is what the State Board Defendants were already doing.

No answer to the complaint was filed. [D.E. 14-21, 65, 66, 67]

In two motions seeking an extension of the time to respond to the Complaint, the State Board Defendants made clear to the Court and Proposed Intervenors that they were already implementing a remedial plan likely to resolve all issues raised in this matter and potentially other related cases, supported by a reference to the State Board of Elections website describing those registration repair efforts. [D.E. 65, ¶ 4 (filed July 23, 2025) and D.E. 66, ¶ 5 (filed August 25, 2025)] (both citing the State Board website, "Registration Repair | NCSBE," https://www.ncsbe.gov/registrationrepair (last visited October 3, 2025)).  Both motions also

disclosed that the parties were engaged in good faith negotiations to resolve the instant case, with the latter noting that resolution was imminent. [D.E. 65, ¶ 4, and D.E. 66, ¶ 5]

_Negotiated Resolution of the Instant Action_

After three months of ongoing negotiations that occurred concurrently to the implementation of the State Board's Registration Repair Project (_id._), the parties reached a negotiated resolution of this action in the form of a consent judgment. On September 3, 2025, the parties filed a joint motion for entry of a partial consent judgment and order, along with the proposed consent judgment itself. [D.E. 68-71]

On September 8, 2025, the Court, having considered the motion for entry of judgment, granted the motion and entered the consent judgment. [D.E. 72]

_Related Cases_

The instant action is the last in a series of related cases filed in this District. Each of the related cases touched upon challenges to North Carolina's voter registration database based upon an alleged violation of HAVA[1] Each of these cases was either originally assigned, or reassigned, to the Honorable Richard E. Myers, II, Chief United States District Judge. _Id._

---

[1]     _United Sovereign Americans, Inc., et al. v. North Carolina State Board of Elections, et al._, No. 5:24-cv-00500-M (filed August 24, 2024) (Assigned to Chief Judge Myers);

_Republican National Committee, et al. v. North Carolina State Board of Elections, et al._, No. 5:24-cv-00547-M (filed September 23, 2024) (Assigned to Chief Judge Myers) (hereinafter cited as "_RNC_");

_North Carolina Democratic Party v. North Carolina State Board of Elections, et al._, No. 5:24-cv-00699-M (filed December 6, 2024) (Reassigned to Chief Judge Myers);

_Griffin v. North Carolina State Board of Elections_, No. 5:24-cv-00724-M (filed December 19, 2024) (Assigned to Chief Judge Myers);

_Griffin v. North Carolina State Board of Elections_, No. 5:24-cv-00731-M (filed December 20, 2024) (Reassigned to Chief Judge Myers);

Most of these cases are now closed, however two remain pending in this Court and before the Fourth Circuit, *RNC* and *Kivett II*, respectively. *See note 1, RNC* and *Kivett II*. Both cases deal with state and federal contests, whereas the instant action addressed only federal contests. *Id.* Negotiations are underway to resolve those cases. This was expressly relayed to the Fourth Circuit in *Kivett II* through status reports that disclosed the parties are engaged in ongoing negotiations with resolution likely. *See Kivett II*, No. 25-1021, Dkt. Nos. 54 (filed August 29, 2025) and 56 (filed September 29, 2025). It is anticipated that those negotiations will address federal, state, and local contests.

*Proposed Intervenors*

On June 2, 2025, NC ARA filed a motion to intervene supported by a memorandum of law asserting intervention as of right, or alternatively, permissive intervention. [D.E. 7, 8] NC ARA argued that it represents the interests of its members, older and retired Americans, on a variety of issues, including their voting rights. [D.E. 9, pp 15-18]

On June 17, 2025, the DNC filed a motion to intervene supported by a memorandum of law, also asserting intervention as of right, or alternatively, permissive intervention. [D.E. 34, 35] The DNC asserts that it represents the interests of itself as an organization, its members in North Carolina, and Democratic voters, including their voting rights. [D.E. 35, pp 3-4]

Plaintiffs and State Board Defendants opposed those motions. [D.E. 55, 56, 57].

_____

*Kivett, et al. v. North Carolina State Board of Elections, et al.*, No. 5:25-cv-00003-M (filed January 2, 2025) (Reassigned to Chief Judge Myers), on appeal *Kivett, et al. v. North Carolina State Board of Elections, et al.*, No. 25-1021 (filed January 7, 2025) (hereinafter cited as "*Kivett II*"); and

*Conley, et al. v. Hirsch, et al.*, No. 5:25-cv-00193-M (filed April 14, 2025) (Reassigned to Chief Judge Myers).

4

In the same ruling granting the consent judgment, this Court resolved the motions to intervene finding: "that all interests are adequately represented by the parties in this enforcement action, and that matters raised in the action are fully and finally settled. Therefore, the motions to intervene [D.E. 7, 34, and 39] are DENIED AS MOOT." [D.E. 72, ¶ 17]

On September 16, 2025, NC ARA filed the instant motion for reconsideration of their motions to intervene. [D.E. 73, 74] The motion raises multiple issues with the consent judgment entered by this Court as grounds to justify reconsideration of the denial of intervention. [D.E. 74] NC ARA asserts that its interests were not adequately represented and they should be permitted to intervene because the terms of the consent judgment will disenfranchise voters if they do not provide their driver's license or social security number or will require voters without that information to vote provisional ballots rather than regular ballots, and it grants Plaintiff "unfettered" access to voting records, despite state law providing privacy protection for that information. *Id.*, pp 9-10, 12-15. The express terms of the consent judgment demonstrate this is not the case. [D.E. 72, ¶¶ 6(d) and (e), 8, and 11] Finally, NC ARA also asserts that its interests were not adequately represented because State Board Defendants "capitulated" to Plaintiff at the outset. *Id.*, pp 10-12. This overlooks the fact that the State Board was already in the process of remediating these issues when it engaged in arm's length negotiations to resolve the case consistent with the Board's remedial efforts already underway.

On the same day, DNC filed a renewed motion to intervene. Although not framed as a motion for reconsideration, DNC also seeks reconsideration of the denial of intervention. However, this motion is more narrowly focused and raises only a single concern to the court: the ability to participate as a party should the protections envisioned by paragraph 11 of the consent

5

decree contemplating a protective order from this Court to govern the disclosure of sensitive confidential data found in registration records arise.[D.E. 76]

## ARGUMENT

### I. The Consent Judgment Does Not Disenfranchise Voters or Apply to State and Local Elections.

NC ARA's argument that voters in state and local elections will be disenfranchised by the terms of the consent judgment is not accurate or relevant to this action aimed solely at federal contests. [D.E. 74, pp 7-8, 11]  Similarly, the concern that voters will vote provisional ballots also misunderstands the terms of the consent judgment.

First, the terms of the consent judgment in this action expressly state that no voter will be disenfranchised or removed from the registration rolls as a result of this order.  This Court decreed the parties' agreement in paragraph 6(d) of the consent judgment that all provisional ballots voted in accordance with this process will be counted for federal contests regardless of whether they present the missing information or the missing information is validated, so long as the voter is otherwise eligible to vote under state law. *Id.*, ¶ 6(d).  Paragraph 6(e) expressly states that the provisional voting process shall not, by itself, result in any voter being removed from the list of registered voters in *state* or Federal elections in North Carolina. *Id.*, ¶ 6(e).  If that was not sufficiently clear, paragraph 8 additionally confirms that nothing in the Order itself or the remedial plan outlined therein permits the removal of an individual except as permitted under the National Voter Registration Act ("NVRA").  Thus, the argument that the consent judgment in the instant case would disenfranchise voters or result in their removal is expressly contradicted by the terms of the consent judgment itself.

And at bottom, issues related to state and local contests raised by NC ARA in its pending motion to reconsider are not implicated by the instant action.  Those issues are pending before

6

this Court in *RNC* matter, and before the Fourth Circuit and state courts in *Kivett II*. The parties in those parallel actions, DNC, RNC, and the State Board, are engaged in active negotiations to resolve these issues with respect to state and local contests. For that reason, and because Plaintiff in this action was exclusively concerned with federal elections, the parties expressly limited the consent judgment to federal contests only: "The terms of this Order apply to all elections for federal office held in North Carolina." [D.E. 72, ¶ 2] The consent judgment contains no provisions that apply its terms to state and local elections. *Id.* Thus, contrary to proposed Intervenor's assertions, this Court did not give its seal of approval to anything related to those contests, only federal contests.

Finally, and for the same reasons, the concern that affected voters will be asked to vote provisional ballots is similarly misplaced. As noted above, agreed to by the parties and approved by this Court, no provisional ballots cast for federal contests as a result of this consent judgment will be discounted solely because they failed to provide the data requested or that the data does not match. *Id.*, ¶ 6(d). And as stated above, how that process will be handled for state and local elections is not relevant to this action, which is solely concerned with federal contests. Thus, voting a provisional ballot as a result of this process presents no potential harm to voters for federal contests and thus there is no additional interest unique to NC ARA that is not already adequately addressed.

Moreover, because the related *RNC* action that will address state and local contests remains pending before this Court, the terms of any negotiated consent judgment that results from those actions will also be subject to judicial review in that related case before being entered. Thus, to the extent NC ARA is concerned with how voters in state and local contests will be affected, the *RNC* action or the *Kivett II* action is the appropriate place for those concerns

7

to be raised, not the instant action.

Thus, NC ARA's concerns about the terms in the consent judgment are misplaced and can be addressed, if necessary, in related litigation. As a result, NC ARA's concerns do not justify intervention.

## II. The Consent Judgment Does Not Grant Plaintiff Unfettered Access to Private Information.

The one argument shared by both Proposed Intervenors is their concern with paragraph 11 of the Consent Judgment. At the outset, a review of that paragraph and the express language contain therein may be helpful to consideration of this issue:

> 11. State Board Defendants will make available to the United States upon request any non-privileged documents created or maintained by State Board Defendants regarding compliance with this Order or compliance with Section 303(a)(5) of HAVA, including voter records in the State's HAVA List and any relevant documents that the State Board Defendants may be required to produce or retain under North Carolina State law. As used herein, "voter records" means an electronic copy of the State's HAVA list including each registrant's full name, date of birth, residential address, his or her driver's license number or state identification number or the last four digits of the registrant's social security number, which is the information required under HAVA to register individuals for Federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i). *All records and data received by the United States from the State Board Defendants will be kept securely and treated consistently with the Privacy Act, 5 U.S.C. § 552a, et seq. To the extent confidential records or data is requested, the State Board Defendants reserve the right to seek a protective order from the Court.*

[D.E. 72, ¶ 11 (emphasis added)] NC ARA argues that this provision "would grant DOJ unfettered access to voters' driver's license numbers, dates of birth, and partial social security numbers, all of which are meant to be kept confidential under state law." [D.E. 74, pp 14] NC ARA and DNC argue that federal law does not grant the federal government access to such data. *Id*., and [D.E. 76, pp 4-5]

8

The consent judgment in this action permits Plaintiff to request information about the registration repair project, including appropriate voter records in the State's HAVA List, to ensure the remedial project is working as anticipated and in compliance with this consent judgment. Contemplating that it is feasible that some of the information requested may encompass confidential data, State Board Defendants took steps to ensure that any such confidential or sensitive information would remain protected. To address that concern, and ensure that no such unlawful use or disclosure of confidential information arises during the compliance period, the consent judgment specifically reserves the right for the State Board Defendants "to seek a protective order from the Court." [D.E. 72, ¶ 11]

Thus, contrary to NC ARA's assertion, this provision does not grant unfettered access to North Carolina's voter records. Rather, the agreement states that if any information is requested, the State Board expressly preserves the right to seek a protective order from this Court to ensure any confidential information is adequately protected. The United States is also required to keep the information securely and treat it consistently with the Privacy Act, 5 U.S.C. § 552a, et seq. Thus, it allows neither automatic access or unfettered access in violation of either North Carolina or Federal law. Instead, it is deliberately constrained access, the bounds of which will ultimately be determined by this Court if such a request is made.

As the consent judgment indicates, if such a request is made to State Board Defendants, they intend to seek a protective order similar to protective orders entered in other actions in which similar records were disclosed as part of litigation. *See e.g.*, *Democracy NC, et al. v. Hirsch, et al,* 1 23-cv-00878-S, D.E. 68. The State Board anticipates that any such request would include the same or similar protective provisions to what is contemplated by the DNC in their moving papers, similar to the cited protective order above. *Id.*, and [D.E. 76, p 7]

9

Regardless of whether that satisfies Proposed Intervenors at this juncture, the point remains that this is an issue that has not yet arisen and is therefore not yet ripe. If it does arise, it will be squarely before this Court to determine what access is warranted and what protections should come with that access. If that happens, the State Board Defendants, entrusted as the custodians of these records, will continue to adequately represent the interests of the people of North Carolina and will ensure that this data is required to be treated as required by North Carolina and Federal law, such that intervention remains unnecessary. To the extent that the Proposed Intervenors find the State Board Defendants' actions inadequate to protect the information at that time, only then would it be appropriate for them to seek additional relief. The need for any such relief now is speculative and should not serve as a basis for intervention.

### III. The Consent Judgment was the Product of a Good-Faith, Arm's Length Negotiation.

The final argument raised by NC ARA is that the consent judgment was the result of collusion between Plaintiff and Defendants. The State Board, however, was well on its way to implementing remedial measures before this action was filed in response to pre-election HAVA complaints, and related litigation filed both pre-election and post-election.[2] The fact that the instant action raised issues that the State Board was already resolving and was therefore itself resolved quickly is not evidence that the State Board "capitulated" in response to the suit. If anything, it is evidence that this action was likely not necessary in the first place, but that once it was filed, further litigation was likewise inappropriate.

---

[2]    *See note 1 supra.*

## CONCLUSION

Thus, regarding the instant motions seeking to revisit the intervention decision by this Court, the parties already adequately briefed those issues, the Court correctly determined those requests, and Proposed Intervenors have presented no additional reason for this Court to revisit that decision. For these reasons, the motions should be denied.

Respectfully submitted this the 2nd day of December, 2025.

NORTH CAROLINA
DEPARTMENT OF JUSTICE

/s/ Terence Steed
Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
Email: tsteed@ncdoj.gov

/s/ Mary L. Lucasse
Mary L. Lucasse
Special Deputy Attorney General
N.C. Bar No.: 39153
Email: mlucasse@ncdoj.gov

North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6567
Facsimile: (919) 716-6763

*Counsel for State Board Defendants*

11